# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2635

_____

| | | |
|---|---|---|
| Merrill Lynch, Pierce, Fenner and Smith, Inc., a Delaware Corporation, | * * * * | |
| Appellee, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Missouri. |
| Jeremiah W. Nixon, Attorney General, State of Missouri;  Keith D. Halcomb, Assistant Attorney General, State of Missouri;  Missouri Commission on Human Rights;  Gerald P. Gretman, Chairperson, Missouri Commission on Human Rights;  Donna Cavitts, Executive Director, Missouri Commission on Human Rights; Geraldine Johnson, Commissioner; Sterling Adams, Commissioner; and Nancy Reynolds, Presiding Commissioner, | * * * * * * * * * * * * * | |
| Appellants. | * | |

_____

Submitted:  February 18, 2000

Filed:  April 24, 2000

_____

Before WOLLMAN, Chief Judge, and BOWMAN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

When Merrill Lynch, Pierce, Fenner and Smith, Inc. (Merrill Lynch), filed a complaint seeking an order enjoining the Missouri Commission on Human Rights and certain state officers (collectively in this opinion, MCHR, unless otherwise noted) from proceeding in an administrative action with discrimination claims against Merrill Lynch, the district court issued an order limiting the forms of relief that the MCHR could seek from Merrill Lynch in the administrative action. The MCHR appeals from this order and we affirm in part and vacate in part.

I.

When Anthony Hoskins was terminated from his employment as a stockbroker with Merrill Lynch, he submitted several claims to arbitration, asserting among other things that his termination violated Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e through § 2000e-17, and the Missouri Human Rights Act, *see* Mo. Rev. Stat. §§ 213.010-213.137. The submission of his claims to arbitration was pursuant to an employment contract known as a "Form U-4," which Mr. Hoskins signed at the commencement of his employment with Merrill Lynch, and that provides that the employee must submit certain employment-related disputes to arbitration. The arbitrator ultimately found against Mr. Hoskins and dismissed his claims with prejudice.

While Mr. Hoskins's dispute was pending in arbitration, he filed an administrative complaint with the MCHR. Some time after the arbitrator found against Mr. Hoskins, the MCHR initiated an administrative action against Merrill Lynch, contending that Merrill Lynch had violated rights guaranteed to Mr. Hoskins under Missouri law. Merrill Lynch then filed this complaint in federal court, seeking to enjoin the MCHR from proceeding with its administrative action. Merrill Lynch argued that,

in light of the arbitrator's decision to dismiss Mr. Hoskins's claims with prejudice, the Federal Arbitration Act, *see* 9 U.S.C. §§ 1-16, precluded the MCHR from bringing its administrative action against Merrill Lynch. The district court enjoined the MCHR from seeking monetary relief on behalf of Mr. Hoskins in its administrative action but refused to enjoin it from seeking injunctive relief on his behalf in that action.

## II.

The MCHR first argues that the district court incorrectly found that Merrill Lynch's complaint presented a federal question. The MCHR points out that its administrative action against Merrill Lynch is based only on state law, and argues that under the well-pleaded complaint rule federal-question jurisdiction exists only if "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The MCHR contends that since the Federal Arbitration Act provides Merrill Lynch with, at most, a federal defense to state-law claims, no basis exists for federal-question jurisdiction. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 14, 18-19 (1983).

The MCHR's argument is off the mark, however, because "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). It seems to us that the key questions are whether the federal arbitration statutes create some federal right for Merrill Lynch, and whether the actions of the MCHR in this case would interfere with that right. We believe that the answer to both questions is yes. The statutes specifically provide that arbitration agreements will be "enforceable," *see* 9 U.S.C. § 2, and, for reasons that we discuss in greater detail in the next sections, we think that the efforts of the MCHR to proceed with its administrative claims would interfere with this right. Given the language in *Shaw*, 463 U.S. at 96 n.14, therefore, we hold that Merrill Lynch's complaint properly presents a federal question and that the district court had subject-matter jurisdiction to hear it. *See also Fleet Bank, National*

*Association v. Burke*, 160 F.3d 883, 887-88 (2nd Cir. 1998), *cert. denied*, 119 S. Ct. 2340 (1999).

The MCHR advances three arguments in support of its contention that the arbitrator's ruling against Mr. Hoskins does not bar the MCHR from proceeding with its administrative action against Merrill Lynch. The MCHR argues, first, that an arbitration clause cannot preclude Mr. Hoskins from asserting his statutory rights, and therefore could not preclude the MCHR from asserting Mr. Hoskins's statutory rights on his behalf. Second, the MCHR maintains that even if Mr. Hoskins himself is precluded from asserting his statutory rights, the MCHR is not. Finally, the MCHR asserts that even if an arbitration clause could bar both Mr. Hoskins and the MCHR from asserting Mr. Hoskins's statutory rights, the arbitration clause in this case does not do so. We address each of these arguments in turn.

## III.

The MCHR argues that even if an employee is required to arbitrate claims under an arbitration agreement, that does not preclude the employee from later raising the same claims in court. We disagree. We have specifically held that an arbitrator's award constitutes a final judgment for the purposes of collateral estoppel and *res judicata. See Val-U Construction Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 581-82 (8th Cir. 1998). In this case, Mr. Hoskins had a full and fair opportunity to litigate his statutory claims in an arbitral forum, he did so, and he lost. Under both federal and Missouri law, the principles of *res judicata* and collateral estoppel bar Mr. Hoskins from subsequently relitigating these same claims, *see id.* at 582 and *Hoelscher v. Patton*, 842 S.W.2d 127, 128 (Mo. Ct. App. 1992).

The MCHR also suggests that even if the arbitrator's decision would ordinarily have a preclusive effect, it does not when a statutory right, and in particular a right under Title VII, is the subject of the arbitration. The MCHR directs our attention to *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 43, 49 (1974), in which a plaintiff who lost an arbitration hearing subsequently filed a complaint under Title VII. The

*Alexander* Court denied any preclusive effect to the arbitrator's decision on the ground that the arbitrator was ruling only on the plaintiff's "contractual rights" under a collective bargaining agreement, *id.* at 53-54, and not on the plaintiff's "statutory right[s]" under Title VII, *id*. at 52-53, 56. In our case, however, Mr. Hoskins's statutory rights were submitted to arbitration, and there is nothing in *Alexander* that would indicate that the arbitrator's decision should not be given its normal preclusive effect.

The language of § 118 of the Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081 (1991), confirms our view of the matter, for it says that, "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under [Title VII]." We are aware that the House Judiciary Committee notes relevant to § 118 state that the committee did not intend for "the inclusion of [§118] ... to preclude rights and remedies that would otherwise be available [under Title VII]." H.R. Rep. No. 102-40(II), at 80 (1991). This statement, however, is ambiguous, for it might simply mean that the House of Representatives did not intend to make arbitration the sole means of vindicating the rights created by Title VII.

We agree with Merrill Lynch, moreover, that the utility of arbitration would be drastically reduced if an employee were free to relitigate an arbitrated Title VII claim in federal court. We do not see how Congress's explicit endorsement of arbitration can reasonably be read to include a denial of the primary benefit of arbitration, namely, a cost-effective and binding resolution to the dispute. Since we find that the plain language of § 118 at the very least supports the binding and preclusive nature of an arbitrator's award, we decline to allow wholly ambiguous legislative history to undermine its apparent meaning. *See Citicasters v. McCaskill*, 89 F.3d 1350, 1354 (8th Cir. 1996).

IV.

The MCHR argues that even if Mr. Hoskins is barred from personally reasserting his arbitrated claims in court, the MCHR is not precluded from proceeding with its administrative action against Merrill Lynch on the basis of Mr. Hoskins's claims. The MCHR contends that the lack of identity and the lack of common interests between the MCHR and Mr. Hoskins prevent the ordinary principles of *res judicata* and collateral estoppel from binding the MCHR.

We recognize that there is some tension between, on the one hand, the interest in enforceable arbitration agreements and, on the other hand, the interest in independent enforcement of anti-discrimination laws on behalf of the public by agencies such as the MCHR. We agree, however, with the approach to this difficulty that was taken in *Equal Employment Opportunity Commission v. Kidder, Peabody and Company, Inc.*, 156 F.3d 298, 302 (2nd Cir. 1998), which held that in circumstances similar to ours an arbitration agreement precludes the EEOC from seeking purely monetary relief for an employee but does not preclude it from seeking injunctive relief.

A claim for monetary relief such as back pay is highly individual in nature, and we thus conclude that when the MCHR seeks such an award, the MCHR acts more as a representative for Mr. Hoskins than as a separate entity seeking to vindicate public rights. *See Kidder, Peabody*, 156 F.3d at 301-02. If the MCHR were seeking injunctive relief for a broad class of employees, on the other hand, its efforts would presumably be aimed at a pattern of ongoing discrimination, and would involve a matter of greater public interest. *See Equal Employment Opportunity Commission v. Waffle House, Inc.*, 193 F.3d 805, 812 (4th Cir. 1999) ("[a]lthough the [administrative agency] acts in the public interest, even when enforcing only the charging party's claim, ... the public interest aspect of such a claim is less significant than an [administrative agency] suit seeking large-scale injunctive relief to attack discrimination more generally").

We recognize that monetary penalties are an important component of the enforcement mechanism of the Missouri Human Rights Act. We emphasize, however,

-6-

that the arbitration clause in this case does not undermine these statutory penalties: Mr. Hoskins was free to assert all of his statutory claims before the arbitrator, and indeed he did. Under these circumstances, the Supreme Court has found that arbitration is as effective a deterrent, and as effective a method of asserting individual rights, as a judicial proceeding. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991), quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (" 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function' ").

## V.

The MCHR argues finally that even if both it and Mr. Hoskins could be precluded by a proper agreement to arbitrate, the agreement in this case was not in fact an "appropriate" agreement, as required by § 118. The MCHR refers us to a case that held that although Title VII claims could properly be the subject of an arbitration agreement, Form U-4 did not properly inform the employee that she would be required to arbitrate claims arising out of her employment. *See Rosenberg v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 170 F.3d 1, 19-20 (1st Cir. 1999). We do not see how *Rosenberg* is relevant to our case, however, as Mr. Hoskins submitted his claim to arbitration and pursued it to a resolution. Having already submitted his claim to arbitration, Mr. Hoskins may not now assert that he was not properly apprised of the scope of the arbitration clause in his employment contract. *See Kiernan v. Piper Jaffray Companies, Inc.*, 137 F.3d 588, 594 (8th Cir. 1998). The issue in our case is not whether Mr. Hoskins could be required to arbitrate his claim (he did so voluntarily), but rather what preclusive effect should be applied to the MCHR as a result of that arbitration. *Rosenberg* never addresses that question.

## VI.

The district court enjoined the "defendants" from seeking individual monetary remedies on behalf of Mr. Hoskins. The MCHR is only one of the named defendants

but argues that it is entitled to immunity under the eleventh amendment because it is a state agency. We agree.

State agencies acting as "arms" of the state are treated as though they were the state itself, and receive the full immunity from suit described in the eleventh amendment. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf and Eddy, Inc.*, 506 U.S. 139, 144 (1993); *see also Regents of the University of California v. Doe*, 519 U.S. 425, 429-30 (1997). Once the immunity is found to apply, it may be overcome only by a waiver of the immunity by the state, *see Puerto Rico Aqueduct*, 506 U.S. at 144, or, in certain situations, an abrogation of the immunity by Congress. *See Kimel v. Florida Board of Regents*, 120 S. Ct. 631, 640 (2000).

In this case, Merrill Lynch does not dispute the MCHR's contention that it is an arm of the state for eleventh amendment purposes, nor does Merrill Lynch suggest that the state's immunity has somehow been waived or abrogated. Indeed, we note that Merrill Lynch admitted in the district court that the eleventh amendment bars an award of injunctive relief against the MCHR. The discussion of eleventh amendment immunity in the district court's order, however, focused on the propriety of the suit against the individual officers of the MCHR, and never considered the question of whether the MCHR itself was entitled to immunity.

As there is no dispute that the MCHR, as a state agency, is an arm of the state within the meaning of the eleventh amendment, and no indication that either of the exceptions to eleventh amendment immunity applies, we hold that the MCHR is entitled to immunity and should have been dismissed from the suit.

VII.

Despite the fact that it did not file a notice of cross-appeal in this case, Merrill Lynch asks us to modify the district court's order to enjoin the remaining defendants from seeking any individual injunctive relief for Mr. Hoskins. In *Benson v. Armontrout*, 767 F.2d 454, 455 (8th Cir. 1985), however, we held that "an appellee that

has not filed a cross-appeal ... may not obtain from us relief more extensive than it received in the District Court." We therefore decline to consider Merrill Lynch's proposed modification of the injunction entered below.

## VIII.

For the reasons indicated, we affirm the district court's order in part. We vacate the injunction with respect to the MCHR and direct the district court to dismiss the MCHR from the suit. The case is remanded to the district court for proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.