Richard J. SENICH, Plaintiff,

v.

AMERICAN–REPUBLICAN, INC., Defendant.

Equal Employment Opportunity Commission, Plaintiff,

v.

American–Republican, Inc., Defendant.

Nos. CIV. 3:99CV1582(DJS), CIV. 3:99CV1603(DJS).

United States District Court, D. Connecticut.

March 28, 2003.

Jonathan L. Gould, Hartford, CT, for Richard J. Senich.

Markus Landon Penzel, E.E.O.C., Boston, MA, for E.E.O.C.

Margaret J. Strange, James F. Shea, Jackson Lewis, Hartford, CT, for American–Republican, Inc.

## RULING ON THE PLAINTIFF EEOC'S MOTION TO AMEND THE COMPLAINT

SQUATRITO, District Judge.

The plaintiffs bring these actions pursuant to the Age Discrimination in Employment Act ("ADEA"), claiming, *inter alia,* that the defendant's Special Severance Program discriminated on the basis of age.

Now pending before this Court is the plaintiff EEOC's motion for leave to file an amended complaint. For the reasons that follow, the plaintiff's motion is **GRANTED.**

### I. LEGAL STANDARD

In the instant motion, plaintiff EEOC seeks to amend its complaint. Generally, a motion to amend is governed by Rule 15 of the Federal Rules of Civil Procedure. Under Rule 15, a pleading may be amended after a responsive pleading has been served "only by leave of the court or written consent of the adverse party." Fed.R.Civ.P. 15. The rule states that such "leave shall be freely given when justice so requires." *Id.*

A motion for leave to amend the complaint can be denied, however, if the defendant can demonstrate undue delay in filing the amended complaint, undue prejudice if the amended complaint is permitted, or the futility of the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "Mere delay, however, absent a showing of bad faith and undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981). In order to be considered futile, the complaint as amended would fail to withstand a motion to dismiss for failure to state a claim. *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002). "While futility is a valid reason for denying a motion to amend ... this is true only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson,* 200 F.3d 65, 70–71 (2d Cir.1999) (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). Finally, consistent with the appropriate standards for

**42**

a motion to dismiss, the Court must accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).

▓▓▓ Where a scheduling order has been entered, as is the case here, the lenient standard under Rule 15, which provides that leave to amend "shall be freely given," must be balanced against the requirement under Rule 16(b) of the Federal Rules of Civil Procedure that the Court's scheduling order "shall not be modified except upon a showing of good cause." *Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir.2003) (citing *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339 (2d Cir.2000)). "A finding of good cause depends on the diligence of the moving party." *Id.* (citing *Parker,* 204 F.3d at 340).

The Court will now consider the EEOC's motion in light of this standard.

## II. DISCUSSION

Plaintiff EEOC moves to amend its complaint to specify by name the individuals on whose behalf the EEOC seeks victim-specific relief and/or monetary damages. In addition to those named in the original complaint, the EEOC seeks to add five individuals: Robert Demske, Steve Lafreniere, Carl Mathieu, Peter Pape and Bill Radzunas—all of whom signed a waiver and release with the defendant as a condition of receiving payments under the Special Severance Program.

The parties do not dispute that at the time the EEOC filed its original complaint, it was barred from pursuing victim-specific relief on behalf of these employees because each had signed a valid waiver and release. *See, e.g., EEOC v. Kidder, Peabody & Co.,* 156 F.3d 298, 301 (2d Cir.1998); *EEOC v. Cosmair, Inc.,* 821 F.2d 1085, 1091 (5th Cir.1987); *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1543 (9th Cir.1987); *EEOC: Guidance on Waivers Under the ADA and Other Civil Rights Laws,* EEOC Compliance Manual (BNA) N:2345, N:2347 (Apr. 10, 1997). The central disagreement between the parties, however, is how the position of the EEOC on this point has changed since the United States Supreme Court's ruling in *EEOC v. Waffle House,* 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (hereinafter *Waffle House II* ).

▓▓▓ The EEOC argues that *Waffle House* "undermine[s] the reasoning" applied in the line of cases which have been interpreted to prohibit the EEOC from seeking victim-specific relief where an employee signs a waiver or release, including the Second Circuit's opinion in *EEOC v. Kidder Peabody.* While the defendant concedes that *Waffle House* may "call . . . into question" this line of cases, it argues that the reasoning supporting these cases is left unaffected by the Supreme Court's limited holding in *Waffle House.* Accordingly, the defendant argues that there is no "good cause" for allowing the EEOC to amend its complaint on the basis of *Waffle House.* Furthermore, the defendant suggests that it would be against public policy for the Court to accept the EEOC's expansion of *Waffle House* to the facts in this case, and that in any event, the EEOC has not satisfied its statutory obligation to conciliate on behalf of these five individuals. Finally, the defendant argues that it will be prejudiced if the EEOC is allowed to amend its complaint because additional discovery and motion practice will be required.

Of all the arguments asserted by the defendant, the Court believes that the impact of the Supreme Court's ruling in *Waffle House* is the key factor to be considered in this ruling. The Court will briefly address the defendant's other arguments, however. First, in light of the procedural posture of the case at the time *Waffle House* was decided, the Court finds that the EEOC's decision to delay the filing of this motion was not the result of any bad faith. Furthermore, the Court finds that the defendant will suffer minimal prejudice with the addition of these five individuals, primarily for the reasons offered by the EEOC. *EEOC's Reply Brief* [doc. # 61] at pp. 6–7.

The Court also finds it eminently reasonable, especially in light of the procedural status of the case at the time of the amended complaint, that the EEOC failed to conciliate

on behalf of these five individuals before it filed its amended complaint. As the parties are aware, the EEOC did originally attempt to conciliate not only on behalf of several employees affected by the Special Severance Program, but also "any other similarly situated employees," which would presumably include the five individuals at issue here. The defendant denied that the Special Severance Program was discriminatory, and rejected the EEOC's conciliation proposal. As a result, the EEOC ceased conciliation efforts, deeming any future efforts "futile" or "nonproductive."

The real issue before the Court, however, is if the Supreme Court's decision in *Waffle House* provides the EEOC with "good cause" to amend its complaint. A brief background is necessary in order to understand the impact of the Supreme Court's ruling in *Waffle House*. Prior to the Supreme Court's 2002 ruling in *Waffle House*, the Second Circuit held in *EEOC v. Kidder Peabody*, that the EEOC was barred from seeking victim-specific relief on behalf of employees who had signed an arbitration agreement. The Second Circuit explained the rationale of such a limitation:

> While recognizing that the EEOC's right of action is separate from the employee's, circuit courts have uniformly held that the EEOC may not seek monetary relief in the name of an employee who has waived, settled, or previously litigated the claim. To justify this result, courts have relied in large measure on the distinctive enforcement scheme of the ADEA and the belief that in seeking individual monetary relief, as opposed to class-wide injunctive relief, the EEOC does not represent the public interest to the same degree.

*Kidder Peabody*, 156 F.3d at 301.

This opinion was one of several conflicting rulings among the circuit courts, including the Fourth Circuit's ruling in *EEOC v. Waffle House*, 193 F.3d 805 (4th Cir.1999) (hereinafter *Waffle House I*); *see also EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448 (6th Cir.1999); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nixon*, 210 F.3d 814 (8th Cir.2000). In 2001, the Supreme Court acknowledged the "conflicting conclusions" among the circuit courts on this issue, and granted *certiorari* in the Fourth Circuit case of *EEOC v. Waffle House* in order to resolve the conflict. *EEOC v. Waffle House*, 532 U.S. 941, 121 S.Ct. 1401, 149 L.Ed.2d 344 (2001).

In the case that was ultimately heard by the Supreme Court, the Fourth Circuit "agreed with the balance [of public interests] struck by the Second Circuit" in *Kidder Peabody*. *Waffle House I*, 193 F.3d at 812. Specifically, the Fourth Circuit held that when an employee has signed a mandatory arbitration agreement, the EEOC's remedies in an enforcement action are limited to injunctive relief. *Id.* at 813. The Fourth Circuit reasoned that the pursuit of victim-specific relief by the EEOC would largely satisfy the private interest of the employee, and thus did not serve the public interest the EEOC was entrusted to protect. In so holding, the Fourth Circuit cited the conflicting interests involved:

> When the EEOC seeks "make-whole" relief for a charging party, the federal policy favoring enforcement of private arbitration agreements outweighs the EEOC's right to proceed in federal court because in that circumstance, the EEOC's public interest is minimal, as the EEOC seeks primarily to vindicate private, rather than public interests. On the other hand, when the EEOC is pursuing large-scale injunctive relief, the balance tips in favor of EEOC enforcement efforts in federal court because the public interest dominates the EEOC's action.

*Id.* at 812. The Fourth Circuit reasoned that allowing the EEOC to seek victim-specific relief on behalf of an employee who had not pursued mandatory arbitration "trample[d]" on the strong federal policy, pursuant to the Federal Arbitration Act, to encourage arbitration. *Id.*

The Supreme Court disagreed, however, and held that an agreement between an employer and its employee to arbitrate employment related disputes does not bar the EEOC from pursuing victim-specific relief. *Waffle House II*, 534 U.S. at 297–98, 122 S.Ct. 754. In reversing the Fourth Circuit, the Supreme Court rejected the Fourth Cir-

cuit's assessment of the relationship between victim-specific relief and the public interest. Instead, the Supreme Court believed that there was a public interest in victim-specific relief, and found that even when the EEOC "pursues entirely victim-specific relief," it may be "seeking to vindicate a public interest, not simply provide make-whole relief for the employee." *Id.* at 295–96, 122 S.Ct. 754. For example, the Supreme Court reasoned that punitive damages awarded to an injured employee might affect the public interest by deterring similar conduct in the future. *Id.* ("punitive damages may often have a greater impact on the behavior of other employees than the threat of an injunction"). Ultimately, the Supreme Court held that the EEOC could seek victim-specific relief on behalf of employees who had signed an arbitration agreement. *Id.* at 296, 122 S.Ct. 754. The Court concluded that "to hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function." *Id.*

In the time since *Waffle House* was decided, the Supreme Court's reasoning has not been explicitly extended to apply to situations where an employee has signed a waiver or release, rather than an arbitration agreement. Indeed, the Supreme Court suggested that whether such a extension was in order was an "open question":

> But no question concerning the validity of [the employee's] claim or the character of the relief that could be appropriately awarded in either a judicial or an arbitral forum is presented by this record. [The employee] has not sought arbitration of his claim, nor is there any indication that he has entered into settlement negotiations with [the employer]. *It is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek. The only issue before this Court is whether the fact that [the employee] has signed a mandatory arbitration agreement limits the remedies available to the EEOC.* The text of the relevant statutes provides a clear answer to that question.

*Id.* at 297, 122 S.Ct. 754.

Faced with this "open question," the EEOC asks this Court to find that *Waffle House* is applicable to cases, such as this, where an employee signs a waiver or release. If the Court were to do so, then there would be "good cause" to allow the EEOC to amend its complaint. The defendant has a contrary opinion, and argues that without a clear edict from the Supreme Court, there is no "good cause" for an amendment, and that in any event, extending *Waffle House* in the way the EEOC suggests would be wrong-headed. After careful consideration, and in light of the practicalities involved, the Court agrees with the EEOC that the Supreme Court's decision in *Waffle House* supplies the "good cause" necessary to allow the EEOC to amend its complaint to include victim-specific relief on behalf of the five individuals at issue.

The Court considers the extension of *Waffle House's* reasoning in relationship to arbitration agreements, to waivers and releases, quite reasonable. In *Waffle House,* the Supreme Court rejected the Fourth Circuit's assessment of the private and public interest in victim-specific relief—an assessment that was based, at least in part, on the Second Circuit's reasoning in *Kidder Peabody. Kidder Peabody* has been relied upon in this Circuit to support the conclusion that the EEOC may not pursue victim-specific relief for employees who have signed not only an arbitration agreement, but also a waiver or release. *Kidder Peabody,* 156 F.3d at 302. Indeed in *Kidder Peabody,* the Second Circuit explained that "where an individual has freely contracted away, *waived* or unsuccessfully litigated a claim, the public interest in a back pay award is minimal." *Id.* (emphasis added). It is this same conclusion, however, that the public interest in victim-specific relief is insubstantial—that was rejected by the Supreme Court. Thus, it seems natural to conclude that the reasoning supplied by the Second Circuit in *Kidder Peabody* no longer supports prohibiting the EEOC from seeking victim-specific relief on behalf of those who sign a waiver or release.

Be that as it may, the defendant suggests that allowing the EEOC to amend its complaint to seek victim-specific relief for these five individuals "contradicts the public interest and well-established EEOC policy in favor ... of the voluntary resolution of employment discrimination disputes." The interest cited by the defendant is similar to the interest in arbitrating disputes that the Supreme Court considered in *Waffle House*. The Supreme Court concluded, however, that the Fourth Circuit's assessment that such an interest outweighed the "minimal" public interest in victim-specific relief was wrong-headed.

The defendant also suggests that there is a strong public interest in preserving the results of settlement agreements, in part in order to avoid the costs of litigation. The defendant suggests that employers will be less likely to enter into settlement agreements with employees if they are still forced to defend claims brought by the EEOC for victim-specific relief. Certainly the Court agrees that there is a substantial interest in preserving settlement agreements. In a case such as this, however, prohibiting the EEOC from pursuing victim-specific relief does nothing to alleviate the costs of litigation, since the EEOC may still pursue its independent right to seek injunctive relief. In fact, the Supreme Court itself stated that similar concerns were "highly implausible given the EEOC's litigation practice over the past 20 years. When speculating about the impact this decision might have on the behavior of employees and employers, we think it is worth recognizing that the EEOC files suit in less than one percent of the charges filed each year." *Waffle House II*, 534 U.S. at 290 n. 7, 122 S.Ct. 754.

The defendant is correct that the Supreme Court suggested in *Waffle House* that an employee who had entered into a settlement agreement with his employer might offer a different scenario than the facts presented in *Waffle House*. *Id.* at 296–97, 122 S.Ct. 754. Indeed, this Court agrees that there are some situations where an employee's conduct might impact the EEOC's rights to pursue particular relief in a judicial forum. For example, the Supreme Court stated that "if, for example, [an employee] ... had accepted a monetary settlement, any recovery by the EEOC would be limited accordingly." *Id.* at 296, 122 S.Ct. 754. The court continued that it "goes without saying that the courts can and should preclude double recovery by an individual." *Id.* at 297, 122 S.Ct. 754. This does not mean—and the Supreme Court could not have intended—that the EEOC must always be limited in seeking victim-specific relief. Like any other case, the Court can work post-judgment to ensure that the plaintiff does not recover twice for the same damages.

Finally, the Court agrees with the EEOC that this case provides a quite unique situation, which is distinct from *Waffle House* and other cases on point. These employees neither signed an arbitration agreement, nor entered into a traditional settlement agreement. Instead, the employees accepted the benefits of a Special Severance Package in exchange for signing a waiver and release. The defendant would have the Court believe that the acceptance of those benefits is analogous to a traditional settlement agreement, where a potential plaintiff agrees not to go forward with a suit, but instead accepts damages before a trial. The EEOC believes that there is a difference, however, and that difference is that the benefits of the Special Severance Package were not a proxy for any damages the employees might have received in pursuit of their discrimination claims. Instead, the EEOC contends that the Special Severance Package, and the benefits it offered, were discriminatory themselves.[1] Indeed, this may be the type of case that will put *Waffle House's* holding to the test.

---

1. As the EEOC points out, if the Court were to adopt the defendant's argument, an employee who feels that the Special Severance Program is discriminatory would be stuck. If that employee accepted the terms of the offer, he would undoubtedly have to sign a waiver or release, thereby eliminating his opportunity to seek victim-specific relief through the EEOC. If he refused to accept the Special Severance Program and continued working, then he would be precluded from bringing suit pursuant to *Auerbach v. Bd. of Educ. of the Harborfields Cent. Sch. Dist.*, 136 F.3d 104, 108–09 (2d Cir.1998) (employee can't keep working and challenge the discriminatory offer).

In any event, the Court finds that the EEOC has established "good cause" for the Court to allow it to amend its complaint based on *Waffle House*. Of course, this Court's ruling is not the last word on this issue. In time, the Second Circuit and perhaps the Supreme Court will explicitly discuss the breadth of *Waffle House* and its impact on waivers and releases. Until that time, however, the Court finds that *Waffle House* can be read to end the limitation on the EEOC to seek victim-specific relief on behalf of employees who sign a waiver or release.

### III. CONCLUSION

For the foregoing reasons, the plaintiff EEOC's motion to amend [**doc. # 58**] is **GRANTED.** The clerk is directed to docket the amended complaint attached to plaintiff's motion to amend [doc. # 58].

The defendant is directed to respond to the amended complaint pursuant to the time allotted in the Federal Rules of Civil Procedure. Thereafter, the parties shall contact the undersigned to schedule a telephone conference to discuss further scheduling in this matter.