**Mark B. PANGBURN, Plaintiff–Appellant,**

v.

**James CULBERTSON, Court Clerk; John M. York, Sheriff, & Sheriff's Property Clerk, Defendants–Appellees.**

Docket No. 98–2416.

United States Court of Appeals, Second Circuit.

Argued Oct. 20, 1999.

Decided Dec. 21, 1999.

Gregory J. Bevelock, Arnold & Porter, New York, New York (William J. Hoffman and Marc A. Silverman on the brief), for Plaintiff–Appellant.

Scott H. Smith, Law Offices of Scott H. Smith, Rochester, New York, for Defendants–Appellees.

Before: WALKER, McLAUGHLIN, CABRANES, Circuit Judges.

## BACKGROUND

McLAUGHLIN, Circuit Judge:

Because this is, in part, an appeal from a grant of summary judgment to the defendants, we recite the facts in the light most favorable to plaintiff.

On June 5, 1993, Mark Pangburn assaulted a woman in her home in West Sparta, New York. The victim saw Pangburn then drive away in a Chevrolet Blazer which turned out to belong to his wife Kathleen. The Livingston County Sheriff's Department arrested Pangburn later that day while he was driving the Blazer and the Sheriff seized the vehicle as evidence. Pangburn subsequently pled guilty to the assault in Livingston County Court of the State of New York, Criminal Term (Cicoria, *J.*). He was sentenced on October 5, 1993, and appealed to the Appellate Division.

Shortly after his sentencing, Pangburn filed a motion to get back the Blazer. Judge Cicoria denied the motion because the truck was still being held as evidence, pending resolution of Pangburn's appeal. Immediately after oral argument on the motion, however, two Sheriff's Department deputies told Pangburn that Department employees were making "personal use" of the Blazer. This was confirmed when Pangburn's wife ultimately recovered the Blazer in June 1995, about two months after the New York Court of Appeals denied Pangburn leave to appeal his conviction, and two full years after its original seizure. Though in "excellent" condition when it was seized, the Blazer now had "bald" tires, looked "beat-up" and "the mileage had been changed."

■ Thereafter, Pangburn instituted three successive lawsuits in an effort to recover for the Sheriff Department's frolic and detour with the Blazer. Each of these lawsuits was dismissed.[1] Undeterred, Pangburn initiated this action *pro se* in June 1996 in the United States District Court for the Western District of New York (Elfvin, *J.*), against James Culbertson, the Livingston County Clerk, John M. York, the Livingston County Sheriff, and an unnamed property clerk. Pangburn claimed that by seizing and retaining the Blazer, defendants had deprived him of his Fourteenth Amendment right to due process in violation of 42 U.S.C. § 1983. He also alleged that defendants had violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, as well as sundry New York state statutes.

In March 1997, Pangburn moved for summary judgment. The district court *sua sponte* dismissed Pangburn's FOIA and Privacy Act claims, leaving his § 1983 claim as the sole federal cause of action. The court also suggested that Pangburn amend his "rambling" and "repetitive"

---

1. To the extent that defendants could have pled the *res judicata* effect of any or all of these dismissals as an affirmative defense in this action, *see* Fed.R.Civ.P. 8(c), they have failed to do so even at this late date. Accordingly, any such affirmative defense has been waived. *See Totalplan Corp. v. Colborne,* 14 F.3d 824, 832 (2d Cir.1994).

complaint to set forth the "short and plain statement" envisioned by Fed.R.Civ.P. 8.

Responding to this suggestion, Pangburn moved in June 1997 for leave to amend his complaint. Acting pursuant to 28 U.S.C. § 636(b)(1)(A), the district court referred the motion to Magistrate Judge Carol Heckman. In the proposed amended complaint, Pangburn sought, *inter alia,* to add: (1) Livingston County as a defendant; (2) his wife, the record owner of the Blazer, as a co-plaintiff; and (3) a § 1983 conspiracy claim against defendants Culbertson, York, and the still unnamed property clerk. In a later filing in September 1997, Pangburn: (1) identified the unnamed property clerk as Sergeant Jeffrey L. McDonald of the Livingston County Sheriff's Department; and (2) promised that an affidavit from his wife, Kathleen Pangburn, expressing her desire to join the action as a co-plaintiff, would be "forthcoming."

In a decision and order dated November 7, 1997, the Magistrate Judge denied Pangburn's motion to amend. Noting that the promised affidavit from Kathleen Pangburn was not forthcoming, the Magistrate Judge made no ruling on Pangburn's request to add his wife as a co-plaintiff. Nor did she address Pangburn's motion to add a § 1983 conspiracy claim against the individual defendants. However, the Magistrate Judge considered and denied as "futile," Pangburn's motion to add the County as a defendant.

Pangburn then filed objections to the Magistrate Judge's order in the district court and another motion for summary judgment. Included in Pangburn's summary judgment papers was a title certificate issued by the New York State Department of Motor Vehicles which confirmed that the Blazer was owned by Pangburn's wife, Kathleen. The district court: (1) overruled Pangburn's objections to the Magistrate Judge's order; and (2) denied his motion for summary judgment. In addition, the district court, *sua sponte,* granted summary judgment to the defendants, dismissing Pangburn's § 1983 claim. Apparently referring to the title certificate contained in Pangburn's motion papers, the district court ruled that Pangburn "could not, under any circumstances" advance a § 1983 claim arising from the seizure of the Blazer "because it is clear from the record that Pangburn did not in June. 1993, and still does not, have an ownership interest in the subject vehicle."

Pangburn, who has since obtained counsel, now appeals.

## DISCUSSION

I. *Sua Sponte Grant of Summary Judgment*

Pangburn argues that the district court erred in *sua sponte* granting summary judgment to defendants. We agree.

■ We review a *sua sponte* grant of summary judgment *de novo. See Hispanics for Fair & Equitable Reapportionment v. Griffin,* 958 F.2d 24, 25 (2d Cir.1992) (*per curiam* ).

■ "[A] district court's independent raising and granting of summary judgment … is 'an accepted method of expediting litigation.'" *Ramsey v. Coughlin,* 94 F.3d 71, 74 (2d Cir.1996) (quoting *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991)). Before a district court does so, however, the record must clearly establish both "the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment." *Ramsey,* 94 F.3d at 74.

■ In this case, the district court's *sua sponte* grant of summary judgment and dismissal of Pangburn's complaint was premature. The district court's rationale for the dismissal was that Pangburn could have no § 1983 claim arising out of the Blazer's seizure because—as revealed by the Department of Motor Vehicles's title

certificate—he had no "ownership interest" in the vehicle.

■ While not without intuitive appeal, this reasoning was erroneous. The due process protection afforded to property by the Fourteenth Amendment "has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to 'any significant property interest.'" *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). Indeed, case law makes clear that no formal title ownership is necessary.

In *Fuentes,* the Supreme Court held that a plaintiff had a Fourteenth Amendment property interest in personal property she had bought under an installment sales contract, even though title to the goods remained with the vendor. *See* 407 U.S. at 86, 92 S.Ct. 1983. Her property interest was created by the installment payments she had made, and by the terms of the sales contract, which granted her continued possession of the goods prior to the transfer of title. *See id.*

Relying on *Fuentes,* this Court has twice recognized a Fourteenth Amendment property interest in a vehicle when plaintiffs did not hold title to the vehicle and would not receive such title until satisfaction of an installment purchase agreement. *See Barrett v. Harwood,* 189 F.3d 297, 301 (2d Cir.1999); *Alexandre v. Cortes,* 140 F.3d 406, 410–11 (2d Cir.1998). Despite the lack of formal title ownership in those cases, we concluded that plaintiffs had a property interest in the "continued possession and use" of the vehicles sufficient to trigger the protections of due process. *See Barrett,* 189 F.3d at 301; *Alexandre,* 140 F.3d at 411.

■ Applying that reasoning here, we conclude that the district court erred in *sua sponte* dismissing Pangburn's § 1983 claim without allowing him to submit evidence of his property interest in the Blaz-

er. Such evidence could take a number of forms, including proof that he had made, or contributed to, installment payments on the vehicle. Pangburn might also have been able to demonstrate the requisite interest by submitting proof that the Blazer was "marital property" as defined by New York law. *See* N.Y. Dom. Rel. Law § 236, Pt. B. (1)(c) & (d) (McKinney 1999) (defining "marital property" as "all property acquired by either or both spouses during the marriage" subject to certain exceptions).

As these possible alternatives demonstrate, Pangburn could have submitted evidence to establish that he did indeed have a "significant property interest" in the Blazer. *Fuentes,* 407 U.S. at 86, 92 S.Ct. 1983 (internal quotation marks omitted). Dismissing his § 1983 claim without affording an opportunity to do so was error.

## II. *Denial of Leave to Amend the Complaint*

Pangburn also maintains that he should have been allowed to amend his complaint to add: (1) the County as a defendant; and (2) a § 1983 conspiracy claim against defendants Culbertson, York and McDonald. We agree.

■ The standard for reviewing the denial of a motion to amend a complaint is "abuse of discretion," *Peterson v. Insurance Co. of North America,* 40 F.3d 26, 31 (2d Cir.1994), keeping in mind that leave to amend should be freely granted when "justice so requires," Fed.R.Civ.P. 15(a); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This relaxed standard applies with particular force to *pro se* litigants. "[A] *pro se* complaint is to be read liberally," and should not be dismissed without granting leave to amend at least once when such a reading "gives *any* indication that a valid claim *might* be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (*per curiam* ) (emphasis added) (quotation omitted). Thus, while "futility" is a valid

reason for denying a motion to amend, *John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994), this is true only where it is "beyond doubt that the plaintiff can prove no set of facts in support" of his amended claims. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (internal quotation marks omitted).

## A. *Proposed Addition of the County as a Defendant*

Pangburn should have been allowed to amend his complaint to add the County as a defendant. The Magistrate Judge believed this amendment would have been "futile" because Pangburn alleged only "violations of, rather than the operation of, established procedures," and therefore his claim against the County was barred by the existence of adequate post-deprivation remedies under *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

█ *Hudson,* and its precursor *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), hold that while the Fourteenth Amendment generally requires a hearing before a state deprives a citizen of property, the failure to provide such pre-deprivation proceedings will not necessarily offend due process if the deprivation was caused by the "random and unauthorized" act of a state employee. *Hudson,* 468 U.S. at 533, 104 S.Ct. 3194; *see Parratt,* 451 U.S. at 541, 101 S.Ct. 1908. As the *Hudson* Court reasoned, meaningful *post-*deprivation state remedies satisfy due process in such circumstances because it is "simply impracticable" for the state to provide *pre-*deprivation process where it cannot anticipate when the "random and unauthorized" deprivation will occur. *Id.* (internal quotation marks omitted).

█ By contrast, a state may be able to predict the occurrence of deprivations caused by operation of its own pre-existing procedures. *See Parratt,* 451 U.S. at 541,

101 S.Ct. 1908. As such, this Court has repeatedly held that *Hudson* and *Parratt* apply only where the deprivation complained of is " 'random and unauthorized.' " *Alexandre v. Cortes,* 140 F.3d at 411 (quoting *Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990)); *see Sullivan v. Town of Salem,* 805 F.2d 81, 86 (2d Cir.1986). To state it another way, the availability of post-deprivation remedies does not defeat a § 1983 claim where the alleged loss results from adherence to an established state or municipal policy. *See Alexandre,* 140 F.3d at 411; *Sullivan,* 805 F.2d at 86 (*Hudson* and *Parratt* "are simply inapposite" to suits seeking redress of harms inflicted "pursuant to town policy").

█ Read liberally, Pangburn's proposed amended complaint alleged the existence of such an established policy here. Specifically, the proposed complaint charged that Pangburn had been deprived of due process by a Livingston County "policy" of "excessive ... detainment of property," which resulted in the "misappropriation" of the Blazer, as well as its "personal use" by Sheriff's Department employees.

█ It lies within the realm of possibility that Pangburn might actually prove the existence of this policy. To do so, he need not show that the policy was engraved in an "explicitly adopted rule or regulation." *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 870 (2d Cir.1992). Instead, Pangburn could attempt to meet his burden of proof in a number of ways. For example, he might be able to show that Sheriff York was a Livingston County policymaker, *see Weber v. Dell,* 804 F.2d 796, 803 (2d Cir. 1986), and that York authorized a practice of retaining property (ostensibly held as evidence) for the personal use of himself and his subordinates. *See Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 137 (2d Cir.1999) (even "a single decision" by an official with final policymaking authority may, in some instances, be sufficient to establish a "policy") (citing *Pembaur v.*

*City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Additionally, Pangburn might seek to hold the County liable on the basis of the conduct of subordinate Sheriff's Department employees. This could be done either by showing that the County failed to train such subordinates, exhibiting " 'deliberate indifference' " to the rights of its citizens, *Young v. County of Fulton,* 160 F.3d 899, 903–04 (2d Cir.1998) (quoting *Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.1992)), or by showing that the subordinates themselves had a practice of misusing property held as evidence that was so "permanent and well settled" as to "imply the constructive acquiescence of senior policy-making officials." *Sorlucco,* 971 F.2d at 870; *see Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996).

In sum, because it is not "beyond doubt" that Pangburn would fail to prove the existence of a pernicious Livingston County policy, he should have been allowed to amend his complaint to add the County as a defendant. *Ricciuti,* 941 F.2d at 123. Accordingly, we vacate the order denying him leave to amend, and remand to allow him to do so.

### B. *Proposed Conspiracy Claim*

We also conclude that Pangburn should have been allowed to amend his complaint to plead a § 1983 conspiracy claim against defendants Culbertson, York and McDonald.

■■■■■■ To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Carson v. Lewis,* 35 F.Supp.2d 250, 271 (E.D.N.Y.1999); *see, e.g., Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 131 (2d Cir.1997) (citing *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir.1996) (setting forth elements)). While "conclu-

sory allegations" of a § 1983 conspiracy are insufficient, *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2nd Cir.1993) (citing cases), we have recognized that such "conspiracies are by their very nature secretive operations," and may have to be proven by circumstantial, rather than direct, evidence. *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir.1994).

■■■■■ Although Pangburn's *pro se* proposed amended complaint obviously could benefit from further amendment, it does sufficiently allege a § 1983 conspiracy. Read with the requisite liberality, that complaint alleges that defendants Culbertson, York and McDonald, "intentional[ly]" retained the Blazer for an excessive two-year period; that two Sheriff's deputies informed Pangburn that the Sheriff's Department was making "personal use" of the Blazer; and that defendants Culbertson, York and McDonald attempted to "cover-up" their unlawful acts by, *inter alia,* refusing to respond to Pangburn's requests for the Blazer's return. These allegations are pleaded with the "requisite specificity" to state a claim for conspiracy under § 1983. *Dwares,* 985 F.2d at 100.

\*     \*     \*     \*     \*     \*

To summarize, we conclude that the proposed amendments to Pangburn's complaint were not futile and should have been allowed. As a final matter, we note that shortly after the Magistrate Judge denied Pangburn's motion to amend, Mrs. Pangburn finally submitted the promised affidavit indicating her wish to join her husband as a co-plaintiff in this action. We leave it to the district court on remand to ascertain whether Mrs. Pangburn still wishes to become a plaintiff, and whether she may do so.

### CONCLUSION

The orders denying Pangburn leave to amend his complaint and granting defendants summary judgment are VACATED.

This case is REMANDED for further proceedings.