Sophia PHOENIX

v.

T. REDDISH, et al.

No. CIV.3:99CV1698(AHN).

United States District Court,
D. Connecticut.

April 19, 2001.

John R. Williams, David G. Toro, Williams & Pattis, New Haven, CT, for plaintiff.

Michael A. Wolak, III, Office of Corp. Counsel, New Haven, CT, for T. Reddish, J. Redente, City of New Haven, defendants.

Timothy Andrew Diemand, Wiggin & Dana, New Haven, CT, for Gail Sicilia, defendant.

Peter L. Brown, Daniel R. Shapiro, Attorney General's Office, Hartford, CT, Patricia A. Gerner, Richard J. Lynch, Attorney General's Office, Health & Human Services, Hartford, CT, for Beryl Carr, defendant.

Beryl Carr, New Haven, CT, pro se.

Edward Wood Dunham, Timothy Andrew Diemand, Wiggin & Dana, New Haven, CT, for Scott Migdale.

## RULING ON DEFENDANT CARR'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

In this § 1983 action the plaintiff, Sophia Phoenix ("Phoenix"), alleges that the defendants, police officers of the City of New Haven and employees of the Connecticut Mental Health Center, violated her Forth Amendment rights and her right to privacy.

Presently pending is the motion of defendant Beryl Carr ("Carr") for summary judgment. For the following reasons, the motion [doc. # 43] is GRANTED.

## STANDARD OF REVIEW

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *See D'Amico*, 132 F.3d at 149. Instead, the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists. *See Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir.1998). To defeat summary judgment "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the evidence produced by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50, 106 S.Ct. 2505.

## FACTS

Based on Carr's affidavit and 9(c) statement and Phoenix's 9(c)2 statement, the following facts are undisputed.

Carr was a mental health worker employed by the Connecticut Mental Health Center, a division of the Connecticut Department of Mental Health and Addiction Services.

Shortly after noon on May 7, 1998, at the request of the New Haven Police Department ("NHPD"), Carr and his supervisor, Gail Sicilia ("Sicilia"), met two New Haven police officers at Phoenix's condominium for the purpose of evaluating her mental status. They had been informed by the NHPD that on a daily basis at all hours of the night, it had been receiving two or three phone calls from Phoenix complaining about noise in the neighborhood, and that it had been informed that Phoenix had recently purchased a rifle.

Phoenix met them outside her condominium unit. Sicilia interviewed her for thirty to forty-five minutes. Phoenix told Sicilia that the noise in the neighborhood had deprived her of sleep. She claimed that the police were conspiring to allow the noise to continue to prevent her from getting sleep.

Carr did not speak to Phoenix. He only observed her behavior. Sicilia conferred with Carr after she interviewed Phoenix. They determined that in their best professional judgment, Phoenix appeared delusional and needed a psychiatric evaluation. The police filled out a Police Emergency Examination Request and transported Phoenix to Yale New Haven Hospital for a psychiatric evaluation. Carr did not participate in any discussions concerning Phoenix's transportation to Yale New Haven Hospital, he did not participate in her transport, nor did he physically seize or restrain her.

Before the police transported Phoenix to the hospital they entered her home and removed the rifle. Carr did not participate in any discussions regarding seizure of Phoenix's rifle, nor did he enter her home, search her home, or seize the rifle.

Prior to May 7, 1998, Carr had never met Phoenix and did not have any information about her. He was not privy to any confidential information concerning Phoenix either before of after the May 7, 1998 incident and did not disclose any confidential information about her to the New Haven police or to any other official of the City of New Haven.[1]

---

1. In her 9(c)2 statement, Phoenix disagrees with these two facts, but she does not submit

## DISCUSSION

Carr moves for summary judgment on the grounds that he is entitled to qualified immunity. He maintains that there is no evidence that he personally participated in the alleged deprivation of Phoenix's constitutional rights or that he conspired with the other defendants to do so. Carr also maintains that there was no clearly established duty requiring him to intervene to prevent the alleged acts of the other defendants. In opposition, Phoenix asserts that Carr's lack of active participation in the unconstitutional conduct does not relieve him from liability because he may be found liable for conspiring with the other defendants to deprive her of her rights. She also maintains that Carr is not entitled to qualified immunity because he had a duty to prevent the other defendants from violating her rights and failed to stop them. The court disagrees.

### I. *Conspiracy*

■ The defendant's personal involvement in an alleged constitutional violation is a necessary element of a § 1983 claim. *See Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir.1999). A plaintiff must establish that each defendant was directly and personally responsible for the alleged conduct and that the conduct was a proximate cause of her injury. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir.1987). Where, as here, there is no evidence that a defendant personally participated in the alleged constitutional deprivation, a defendant can be liable under § 1983 on a conspiracy theory. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999).

■ To establish a conspiracy under § 1983, a plaintiff must prove either by direct or circumstantial evidence (1) the existence of an agreement between two or more state actors (or a state actor and a private entity) (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal. *See Pangburn*, 200 F.3d at 72; *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir.1997) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996)). However, to survive a motion for summary judgment, the non-moving party's evidence of a § 1983 conspiracy "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421.

■ In this case, Phoenix has produced no evidence that Carr and the other defendants had an understanding, either tacit or explicit, to act in concert to deprive her of her constitutional rights. There is no evidence of communications among the defendants that might give rise to an inference of an agreement to enter her home and seize her rifle without a warrant. There is also no evidence that the defendants shared a conspiratorial objective. *See id.* at 422. The plaintiff's only evidence of a conspiracy is that Carr was present when the alleged unconstitutional conduct occurred. This amounts to nothing more than rank speculation and conjecture, and is not sufficient to contradict Carr's evidence that no such conspiracy existed. *See Leon v. Murphy* 988 F.2d 303, 311 (2d

an affidavit or any specific evidence showing that Carr was privy to such confidential information or that he disclosed such information. Indeed, the submission of exhibits to her 9(c)2 statement consisting of a 315–page deposition transcript and her responses to interrogatories, without any reference to specific state-

ments or facts contained therein, does not satisfy her burden of producing specific, particularized facts showing the existence of a genuine factual dispute. Accordingly, the facts as stated by Carr are uncontradicted and are accepted as true.

Cir.1993) (upholding summary judgment in § 1983 conspiracy action where plaintiff's conclusory allegations were unsupported by any specific facts and were flatly contradicted by defendant's evidence); *San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 256 (2d Cir.1984) (affirming summary judgment on conspiracy claim where plaintiff's only evidence was that defendants met and communicated on several occasions and there was nothing suspicious or improper in such meetings).

Absent specific factual allegations as to Carr's participation in the alleged conspiracy, Phoenix's claim can not survive the motion for summary judgment. *See e.g., Mass v. McClenahan,* 893 F.Supp. 225, 231 (S.D.N.Y.1995).

## II. *Clearly Established Duty*

Phoenix argues in opposition to Carr's claim of qualified immunity that he had a duty to intervene to prevent the police officers from violating her fourth amendment rights and that he violated that duty by not acting. This claim is also unavailing.

█ Public officials are entitled to qualified immunity if their conduct did not violate federal or constitutional rights that were clearly established or (2) it was objectively reasonable for them to believe that their conduct did not violate those rights. *See Wilkinson v. Russell,* 182 F.3d 89, 102 (2d Cir.1999), *cert. denied,* 528 U.S. 1155, 120 S.Ct. 1160, 145 L.Ed.2d 1072 (2000); *Weyant v. Okst,* 101 F.3d 845, 857–58 (2d Cir.1996).

██ In evaluating a claim of qualified immunity the threshold determination is whether the plaintiff has alleged the deprivation of an actual constitutional right. *See Wilkinson,* 182 F.3d at 102–03 (citing *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). Only if this threshold inquiry reveals a possible constitutional violation is the court to consider whether the defendant violated that right or whether it was objectively reasonable for the defendant to believe that his action did not violate the right. *See id.* The question of whether a right is clearly established is one of law. *See Giacalone v. Abrams,* 850 F.2d 79, 85 (2d Cir.1988). Because Phoenix has not alleged the existence of a clearly established constitutional right, the court need not go beyond the threshold inquiry.

█ In determining whether a federal or constitutional right was clearly established, the court considers (1) whether the right in question was defined with reasonable specificity, (2) whether the right was supported by Supreme Court or Second Circuit precedent, and (3) "whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent." *Charles W. v. Maul,* 214 F.3d 350, 360 (2d Cir.2000) (quoting *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989)). A right is clearly established if its contours are sufficiently clear so that a reasonable official would understand that his conduct violated it. *See McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999). The pertinent question is "not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent." *Id.* "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Lauro v. Charles,* 219 F.3d 202, 214 (2d Cir.2000) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Contrary to Phoenix's contentions, there is no controlling authority clearly establishing that Carr had a duty to intervene under the circumstances presented here. While the Second Circuit has held that a police officer has a duty to prevent other officers from using excessive force, *see O'Neill v. Krzeminski,* 839 F.2d 9, 11–13 (2d Cir.1988), there is no Supreme Court or Second Circuit authority that imposes an affirmative duty on a non-police state actor such as Carr to intervene to prevent a police officer from conducting an unlawful search and seizure. To the contrary, the Supreme Court and the Second Circuit have held that "[a]s a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act." *Musso v. Hourigan,* 836 F.2d 736, 743 (2d Cir.1988) (holding that a public official did not have a clearly established affirmative duty to prevent another public official from infringing on an individual's first amendment interests) (citing *Rizzo v. Goode,* 423 U.S. 362, 376–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

Only in certain limited circumstances has the Supreme Court found that the Constitution imposes on state actors affirmative duties of care with respect to particular individuals. *See DeShaney v. Winnebago County Dept. of Soc. Serv.,* 489 U.S. 189, 198–99, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (citing cases). In the absence of a specific constitutional duty to act, a state actor can not be held liable under § 1983 for failing to act, even if he stands by and does nothing when suspicious circumstances dictate a more active role. *See id.*

Because Carr did not have a clearly established constitutional duty to intervene, he is entitled to qualified immunity.

### CONCLUSION

For the foregoing reasons, Carr's motion for summary judgment [doc. # 43] is GRANTED.