*DLXXXI
 

 OPINION & ORDER
 

 STEIN, District Judge.
 

 INTRODUCTION
 

 This action arises out of several alleged incidents of harassment, retaliation, and conspiracy against pro se plaintiff Juan Hernandez during his incarceration at Sing Sing Correctional Facility and Green Haven Correctional Facility. Specifically, plaintiff brings suit pursuant to 42 U.S.C. § 1983 for damages against twenty-three employees of both correctional facilities.
 

 Certain of the defendants — specifically, Glenn S. Goord, Charles Greiner, Noel F. Morris, Kelvin Gadson, Carol T. Caban, Robert Pagliuca, Lucien J. LeClaire Jr., Kenneth Perlman, Richard Alexis, Raymond J. Wilk, Jr., James Lawyer, and Charles Butenhoff — move to dismiss the complaint pursuant to Fed.R.Civ.P. 8 for failure to provide a short and plain state
 
 *DLXXXII
 
 ment of the claim and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion is granted in part and denied in part.
 

 BACKGROUND
 

 Plaintiffs claim of alleged harassment begins with the litigation entitled
 
 Hernandez v. Keane,
 
 brought by Hernandez in February 1997 against several Department of Correctional Services (“DOCS”) employees at Sing Sing, including defendant Charles Greiner.
 
 See
 
 No. 97 Civ. 1267(BSJ), 2000 WL 16951, (S.D.N.Y. Jan.7, 2000). In
 
 Keane,
 
 plaintiff alleged indifference to his medical needs during the treatment of a gunshot wound to his hand sustained in 1992 during an incident that led to his arrest.
 
 See Hernandez v. Keane,
 
 341 F.3d 137, 140-41 (2d Cir.2003). A jury trial was held in October 2000 on Hernandez’ claim of medical indifference resulting in a verdict in plaintiffs favor. Following the verdict, U.S. District Judge Samuel Conti granted defendants’ renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.
 
 See Hernandez v. N.Y. State Dept. of Corrections,
 
 No. 97 Civ.1967(SC) 2000 WL 34239139, (S.D.N.Y. Nov.28, 2000). The U.S. Court of Appeals for the Second Circuit affirmed the district court’s determination.
 
 See Hernandez,
 
 341 F.3d at 149. Plaintiff remains in state custody as a result of his conviction for attempted murder in the second degree.
 
 See id.
 
 at 141.
 

 On September 3, 1998, an electrical fire occurred in Sing Sing in the cell occupied by Hernandez; plaintiff complained he lost numerous items of property and the fire was an attempt to injure him. (Compl.lffl 4-5). In response, the very same day of the fire, Hernandez filed a claim at Sing Sing relating to the loss of his property during the electrical fire. (Ex. A12-A15, A49-A50). The procedures established by DOCS relating to inmate property claims, codified at 7 NYCRR § 1700.1
 
 et. seq.,
 
 set forth the claims review process and procedure for appealing the claim to the central office.
 

 DOCS rejected the claim at both Sing Sing and the central office on the grounds that its investigation had not established any negligence by DOCS in connection with the September 3,1998 fire. (Ex. A68, Letter to PI. from Def. Carol T. Caban (“Caban letter”), DOCS Sr. Budget Analyst, February 2, 2000). Hernandez then filed an action against the State of New York in the N.Y. Court of Claims for the value of his property that was lost in the fire. (Compl., ¶ 3, Ex. A8, A9).
 
 [1]
 

 The action resulted in a trial before the Honorable Thomas H. Scuccimarra, Judge of the Court of Claims. (Judge Scuccimar-ra’s decision dated November 29, 2001, attached to Nowve Aff. as exhibit B). At trial, Hernandez represented himself, testifying as to the events in question and introducing exhibits into evidence. (Nov. 29, 2001 Decision at 7). At the trial’s conclusion, Judge Scuccimarra dismissed the claim, which alleged that the state’s agents negligently allowed damage and loss of plaintiffs personal property during the September 3, 1998 cell fire at Sing Sing. (Decision; Nowve Aff., Ex. B).
 

 After the fire, Hernandez was transferred to another cell. The following week — on September 8, 1998' — -in plaintiffs new cell, another fire occurred. Hernandez maintains Correctional Officer Harris was in the vicinity when the fire occurred and “Harris was known to set inmates
 
 *DLXXXIII
 
 cells on fire, if you were disliked by the staff.” (Pl.’s Mem. Response Mot. to Dismiss (“Response”) at 7).
 
 [2]
 
 Plaintiff describes this fire as “an attack on Plaintiffs life.” (Comply 12). Corrections Officer Morris, also a defendant, who served as the prison’s Fire and Safety Chief, reported the fire was caused by a faulty ballast— a component used to stabilize current in a light — and was not suspicious. (Exhibit A4).
 

 Following the second fire, Hernandez was transferred to involuntary protective custody (“IPC”), a remedy used to protect inmates at serious risk of harm from other inmates. It was determined Hernandez did not belong in protective custody because, according to Hernandez, “his problems were
 
 not with inmates of the jail.
 
 But was in fact caused by his filing claims and grievances and
 
 was with the administration and staff members.”
 
 (Response at 7) (emphasis in original). Hernandez subsequently was returned to his original housing unit. Although the hearing regarding the transfer was recorded, the cassette recording currently is missing, according to Hernandez. (Compl.lffl 16-17).
 

 An attorney representing Hernandez then sent letters to the Attorney General’s office demanding that the alleged retaliatory actions be investigated and cease. Hernandez claims that the harassment and retaliation have not ceased. (Comply 21).
 

 On January 25, 2000, plaintiff was moved from Sing Sing to Green Haven. He contends that the transfer was based upon untrue allegations that he had an improper “relationship” with a staff member at Sing Sing. (Compl.lffl 24, 26). A few months after his transfer to Green Haven, defendant Charles Greiner became Superintendent at Green Haven. Plaintiff contends that the acts of harassment and retaliation that allegedly took place at Green Haven — which are set forth below— occurred after Greiner became Superintendent there, were retaliatory in nature, and were motivated, at least in part, because of the
 
 Keane
 
 case, in which Hernandez had named Greiner as a defendant. (CompLIffi 3, 25-27). Specifically, plaintiff alleges that “[f]rom the time Plaintiff arrived in Green Haven, till the time Mr. Greiner arrived, the plaintiff was not harassed or retaliated on.... Once Mr. Greiner arrived in this facility, the Plaintiff began to be harassed and retaliated on by the security staff.” (Compl.t 25, 28).
 

 On October 5, 2000, plaintiff was removed from his cell at Green Haven and placed in federal custody in order to attend the trial in
 
 Keane. (Id.
 
 ¶ 29). Plaintiff alleges that upon his return to Green Haven after the conclusion of the trial, he found a hangman’s noose made of string on his bed. (Comply 33, Ex. B17, 43). Hernandez subsequently filed a grievance about the noose; however, according to plaintiff, defendants attempted to cover-up the incident and that “that grievance mysteriously disappeared thereby denying [him] the grievance mechanism.” (Comply 34). Hernandez did successfully file numerous other grievances during this period, including a grievance about the missing grievance. (Compl.lffl 28, 35).
 

 On March 1, 2001 Hernandez was placed in a top bunk of a double cell, which caused “more pain in his hand and wrist,” which in turn required him to take an increased dose of addictive pain medi
 
 *DLXXXIV
 
 cation. (Conapl-¶¶ 37-40). Hernandez filed grievances and Green Haven acknowledged that an error had been made in placing him in a double cell, and directed that he be relocated to a single cell “as soon as one is available.” (Ex. B28-B29, B34).
 

 In June 2001, Hernandez requested to examine his medical records from October 5, 2000 to March 1, 2001 and allegedly was told they were lost. (CompLf 36). Plaintiff states that he received three “bogus” misbehavior reports at Green Haven, issued on April 16, July 12, and August 6, 2001, all of which were appealed to, and affirmed by, Superintendent Greiner. (Compilé 42, 43). Defendant James Lawyer also allegedly told defendant Charles Butenhoff “not to give plaintiff nothing, and not let plaintiff out of his cell during the scheduled runs.”
 
 Id.
 
 Finally, Lawyer allegedly stated to plaintiff, “this is what happens when you write us up, so don’t cry about getting burnt.”
 
 Id.
 

 Hernandez avows he is being “targeted by the administrative and security staff,” has been “continuously harassed and retaliated on” by the Green Haven staff and had to “file complaints” on six different dates. (CompLlif 42^44, 49). Despite numerous grievances and complaints, plaintiff identifies no administrative determination that supports his claim that he was harassed; he does, however, aver that the “security staff’ instructed him to stop filing grievances and “maybe these officers would stop harassing [him].” (Comply 45-50).
 

 DISCUSSION
 

 A.
 
 Rule 12(b)(6) Standard
 

 In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.
 
 See Weinstein v. Albright
 
 261 F.3d 127, 131 (2d Cir.2001);
 
 Bolt Elec., Inc. v. City of New York
 
 53 F.3d 465, 469 (2d Cir.1995). A motion to dismiss should not be granted unless “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.”
 
 Walker v. City of New York
 
 974 F.2d 293, 298 (2d Cir.1992) (quoting
 
 Ricciuti v. New York City Transit Auth.,
 
 941 F.2d 119, 123 (2d Cir.1991));
 
 see also Chance v. Armstrong,
 
 143 F.3d 698, 701 (2d Cir.1998) (“This rule applies with particular force where the plaintiff alleges civil rights violations.”) (citing
 
 Hernandez v. Coughlin,
 
 18 F.3d 133, 136 (2d Cir.1994)). The review is limited, and “[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.”
 
 Villager Pond, Inc. v. Town of Darien,
 
 56 F.3d 375, 378 (2d Cir.1995) (quoting
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The court’s function on a motion to dismiss is “not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.”
 
 Goldman v. Belden,
 
 754 F.2d 1059, 1067 (2d Cir.1985).
 

 A court generally is limited to the facts stated in the complaint, for purposes of a Rule 12(b)(6) motion, which “include[s] any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.”
 
 Int’l Audiotext Network, Inc. v. AT & T Co.,
 
 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (quoting
 
 Cortec Industries, Inc. v. Sum Holding L.P.,
 
 949 F.2d 42, 47 (2d Cir.1991)).
 

 When considering a Rule 12(b)(6) motion to dismiss against a pro se plaintiff, such as Juan Hernandez, this Court will consider as true facts taken not just from
 
 *DLXXXV
 
 plaintiffs complaint and accompanying exhibits, but also plaintiffs responsive mem-oranda.
 
 [3]
 

 See Baskerville v. Blot,
 
 224 F.Supp.2d 723, 728 (S.D.N.Y.2002) (“[T]he court may consider factual allegations made by a pro se plaintiff in opposition papers and other additional materials.”);
 
 see also Gill v. Mooney,
 
 824 F.2d 192, 195 (2d Cir.1987);
 
 Johnson v. Eastchester Union Free Sch. Dist.,
 
 No. 01 Civ. 2835, 2002 WL 449584, at *2 (S.D.N.Y. Mar.22, 2002);
 
 Burgess v. Goord,
 
 No. 98 Civ.2077, 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan. 26, 1999). Moreoever, the pro se litigant is also held to “less stringent standards than formal pleadings drafted by lawyers ...” and a Court “ ‘must construe the complaint liberally’ and ‘interpret [it] to raise the strongest arguments that [it] suggests].’ ”
 
 See Haines v. Kerner,
 
 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972);
 
 Soto v. Walker,
 
 44 F.3d 169, 173 (2d Cir.1995) (quoting
 
 Burgos v. Hopkins,
 
 14 F.3d 787, 790 (2d Cir.1994)).
 

 B.
 
 Those Aspects of Plaintiff’s Sing Sing Claims that Arise Out of the September 3, 1998 Cell Fire Are Barred by Issue Preclusion
 

 Defendants invoke the doctrine of collateral estoppel to bar plaintiff from seeking relief on the grounds that the same factual issues raised in this complaint were previously decided by the New York Court of Claims against Hernandez. The claims arising out of his confinement in Sing Sing include the alleged harassment and retaliation of the two cell fires, liability for property damage resulting from the September 3, 1998 fire, the transfer to IPC, the loss of the hearing tape, and the transfer to Green Haven. “Collateral es-toppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.”
 
 Marvel Characters v. Simon,
 
 310 F.3d 280, 288 (2d Cir.2002);
 
 see also Commissioner v. Sunnen,
 
 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1948).
 

 A federal court must afford a state court judgment “the same preclusive effect as would be given to the judgment under the law of the state in which the judgment was rendered.”
 
 Johnson v. Watkins,
 
 101 F.3d 792, 794 (2d Cir.1996);
 
 see also Leather v. Ten Eyck,
 
 180 F.3d 420, 424 (2d. Cir.1999) (rule applies to Section 1983 actions). As such, this Court need look to New York law to determine the preclusive effect of plaintiffs Court of Claims action.
 
 See Giakoumelos v. Coughlin,
 
 88 F.3d 56, 59 (2d. Cir.1996). Under New York law, issue preclusion applies when (a) the issue of law or fact has necessarily been decided in the prior action and is decisive of the present action and (b) there was a full and fair opportunity to contest the issue.
 
 See Parker v. Blauvelt Volunteer Fire Co.,
 
 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999); see
 
 also Schwartz v. Public Admin.,
 
 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).
 

 Defendants’ assertion is correct insofar as Hernandez may no longer dispute the factual issue of the cause of the September 3, 1998 cell fire. Moreover, it is equally true that Hernandez may not initiate ac
 
 *DLXXXVI
 
 tion concerning the legal issue of New York
 
 State’s
 
 liability for any property damage that resulted from that fire or any action dependent upon the defendants allegedly being the cause of that fire. Hernandez was afforded a full and fair opportunity to contest these issues before Judge Scuccimarra and his ruling stands as decisive.
 

 However, defendants err in their conclusion that the entirety of plaintiffs Sing Sing claims arise from the same nucleus of operative facts that underlies the complaint here. Much of Hernandez’ claims arising from his stay in
 
 Sing
 
 Sing are based on facts independent of and unconnected to the trial conducted before Judge Scuccimarra.
 

 For example, the facts concerning Hernandez’ claims for harassment and retaliation stemming from the second fire — the September 8, 1998 fire — the transfer of Hernandez to involuntary protective custody, the alleged disappearance of the cassette recording made of the hearing on his transfer to IPC, and the transfer of Hernandez from Sing Sing to Green Haven— which, Hernandez purports, would allow Superintendent Greiner to continue to control Hernandez’ fate — neither were raised before, nor considered by, Judge Scucci-marra.
 

 Thus, only the issues already decided by the New York Court of Claims concerning the September 3, 1998 fire are barred by the doctrine of collateral estoppel from being reconsidered in this proceeding.
 

 C.
 
 Plaintiff Has Set Forth a Short and Plain Statement of Retaliation Pursuant to 42 U.S.C. § 1983
 

 Defendants assert that the complaint fails to meet the pleading standard set forth in Rule 8(a) requiring a complaint to contain “a short and plain statement of the claim showing that the pleader is entitled to relief.”
 
 See generally Swierkiewicz v. Sorema,
 
 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The particular deficiency, defendants contend, is that plaintiffs allegations are unsupported by facts.
 

 Defendants contend that a complaint must contain factual support for its allegations to survive a motion to dismiss and that to state a civil rights claim pursuant to section 1983 in the Second Circuit, “a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights.... ”
 
 See Alfaro Motors, Inc. v. Ward, 814
 
 F.2d 883, 887 (2d Cir.1987). Yet defendants overlook the recent evolution of case law in the Second Circuit sparked by
 
 Swierkiewicz.
 
 In that case, the U.S. Supreme Court held that a plaintiff need not plead facts establishing a prima facie case of employment discrimination in order to survive a motion to dismiss because such a requirement creates a heightened pleading standard incon-gruent with the notice pleading standard set forth in Fed.R.Civ.P. Rule 8(a).
 
 See Swierkiewicz,
 
 534 U.S. at 510-511, 122 S.Ct. 992. Instead, the notice pleading system relies “on the liberal discovery rules and summary judgement motions to define disputed facts and issues and to dispose of unmeritorious claims.”
 
 See id.
 
 at 512, 122 S.Ct. 992 (citing
 
 Conley v. Gibson,
 
 355 U.S. 41, 47-48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);
 
 Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
 
 507 U.S. 163, 168-69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).
 

 The Second Circuit in
 
 Phelps v. Kapnolas,
 
 308 F.3d 180 (2d Cir.2002) elaborated on the contours of the pleading standard in section 1983 actions as follows:
 

 However unlikely it may appear to a court from a plaintiffs complaint that he will ultimately be able prove an alleged fact ..., the court may not go beyond
 
 *DLXXXVII
 
 FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference. Whether the plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment. Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiffs allegation ... fails as a matter of law.
 

 See id.
 
 at 186-87.
 

 The law is straightforward: plaintiff need not plead facts to support his allegations of constitutional violations beyond the requirements of Rule 8(a).
 
 See Swierkiewicz,
 
 534 U.S. at 512, 122 S.Ct. 992;
 
 Phelps,
 
 308 F.3d at 186-87;
 
 see also Salahuddin v. Cuomo,
 
 861 F.2d 40, 42 (2d Cir.1988) (Dismissing a complaint pursuant to Rule 8 is a serious sanction “usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.”).
 

 Plaintiff in this action does provide a complaint that meets the standard of a short and plain statement of the alleged constitutional violations showing that he is entitled to relief on his retaliation claim, especially given the deference due a pro se plaintiff. In particular, Hernandez actually offers more than conclusory allegations of retaliation, alleging several attacks and threats on his life as specific factual instances of retaliation against him because he had filed grievances.
 
 See, e.g., Davis v. Goord,
 
 320 F.3d 346, 352-53 (2d Cir.2003) (The prisoner’s complaint, “read charitably, ... state[d] a claim of retaliation and therefore the defendants’ 12(b)(6) motion to dismiss should have been denied.”).
 

 In
 
 Davis,
 
 the Second Circuit wrote that “[i]n order to survive a motion to dismiss a complaint, a plaintiff asserting a First Amendment retaliation claim must allege ‘(1) that the speech ... was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a casual connection between the protected speech and the adverse action.”
 
 Davis v. Goord,
 
 320 F.3d 346, 352 (2d Cir.2003) (citing
 
 Dawes v. Walker,
 
 239 F.3d 489, 492 (2d Cir.2001)).
 

 “Since the filing of prison grievances is a constitutionally protected activity,” plaintiff meets the first prong of the test.
 
 See id.
 
 (internal citations omitted). In addition, plaintiff has set forth more than adequate allegations of adverse actions, including attempted bodily injury and threats on his life. (Compilé 12, 33). Finally, plaintiff has pled that these adverse actions were caused by his filing grievances. (Compl.1ffl 25, 28). Accordingly, plaintiffs claim for retaliation comports with Rule 8(a).
 

 D.
 
 Plaintiff Has Set Forth a Claim for Conspiracy Pursuant to 42 U.S.C. § 1983
 

 Defendants contend that plaintiffs claim that defendants conspired to violate his constitutional rights pursuant to section 1983 should be dismissed on the ground that it is frivolous.
 
 [4]
 
 “In order to survive a motion to dismiss on his § 1983 conspiracy claim, [a plaintiff] must allege
 
 *DLXXXVIII
 
 (1) an agreement [between two or more state actors] ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.”
 
 See Ciambriello v. County of Nassau,
 
 292 F.3d 307, 324-25 (2d Cir.2002) (citing
 
 Pangburn v. Culbertson,
 
 200 F.3d 65, 72 (2d Cir.1999)). In
 
 Ciambriello,
 
 the court explained that “complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.”
 
 Id.
 
 (quoting
 
 Dwares v. City of N.Y.,
 
 985 F.2d 94, 100 (2d Cir.1993).
 
 [5]
 
 The Second Circuit deemed the factual allegations inadequate in
 
 Ciambriello
 
 because plaintiff had “not provided any ‘details of time and place,’
 
 Dwares,
 
 985 F.2d at 100, and ... ‘fail[ed] to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense.”
 
 Id.
 
 However, the Second Circuit has recognized that conspiracy allegations pursuant to section 1983 “ ‘are by then-very nature secretive operations,’ and may have to be proven by circumstantial, rather than direct, evidence.”
 
 See Pangburn,
 
 200 F.3d at 72.
 

 As to the first element — an agreement between two or more state actors — Hernandez does set forth his allegation of a conspiratorial agreement as follows:
 

 However, once I file with the court of claims that my rights were violated, the staff who violated me tells a few of his colleagues that I’ve done so, then the word spreads around amoungst those Department of Correctional workers, and before you know it I start to get threatened, harassed, by then. If thats not a conspiracy then you tell me what is.
 

 (PI. Mem. at 5). This general allegation of conspiracy indeed is amplified by specific instances of conduct, in accord with
 
 Ciam-briello,
 
 including two cell fires, the transfer to Green Haven, the hangman’s noose, and the “bogus” misbehavior reports — -allegations that, if true, would provide a basis for a claim of retaliation due to plaintiffs exercise of his First Amendment rights, satisfying the requirement for an unconstitutional injury and overt acts in furtherance of that injury.
 

 E.
 
 Plaintiff Has Adequately Alleged the Personal Involvement of Certain of the Defendants, but Not Others
 

 1. Supervisory Defendants
 

 “It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.”
 
 See Johnson v. Newburgh Enlarged Sch. Dist.,
 
 239 F.3d 246, 254 (2d Cir.2001) (citing
 
 Colon v. Coughlin,
 
 58 F.3d 865, 873 (2d Cir.1995)). Personal involvement of supervisory officials in viola
 
 *DLXXXIX
 
 tions alleged pursuant to Section 1983 may be evidenced in several ways:
 

 (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising' subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.
 

 Id.
 
 Plaintiff names two supervisory officials as defendants here — Glenn S. Goord, Commissioner of the New York State Department of Corrections, and Charles Greiner, former Superintendent of Sing Sing and Green Haven. Plaintiff fails to allege any specific claim of personal involvement against Goord; indeed, he does not mention him at all in the body of the complaint but for including his name in a lengthy list of defendants. (Compl. p. 4). Accordingly, the motion to dismiss as to Goord is granted. This Court now turns to the issue of Greiner’s alleged personal involvement.
 

 Accepting all of plaintiffs allegations as true, and drawing all inferences favorable to him for purposes of this motion, plaintiff has adequately alleged Greiner’s personal involvement in the claimed violations. The most favorable reasonable inferences from plaintiffs allegations point to Greiner orchestrating a campaign of harassment in retaliation for plaintiff exercising his First Amendment right to file grievances and pursue other related remedies.
 
 [6]
 
 Plaintiff alleges that “[f]rom the time Plaintiff arrived in Green Haven, till the time Mr. Greiner arrived, the plaintiff was not harassed or retaliated on.... Once Mr. Greiner arrived in this facility, the Plaintiff began to be harassed and retaliated on by the security staff.” (Complaint ¶ 25, 28).
 

 In light of the previous grievances and litigations filed by plaintiff against Greiner, the most favorable inference to be drawn from these allegations from plaintiffs standpoint is that Greiner was directing the retaliation, ordering subordinates to violate plaintiffs rights. Thus, plaintiff has sufficiently alleged the personal involvement of Greiner for purposes of this motion; accordingly, the motion to dismiss the complaint on the grounds of lack of personal involvement by Greiner is denied and motion is granted as to Goord.
 

 2. Subordinate Defendants
 

 Plaintiff alleges that all of the defendants committed specific retaliatory actions against him in response to his exercise of his First Amendment rights, though the allegations against only certain of those defendants satisfy the personal involvement requirement.
 
 [7]
 
 In particular, defendants Wilk and Perlman are alleged
 
 *DXC
 
 to have covered up the existence of the hangman’s noose as a retaliatory act during an investigation of the matter. (Compl. ¶ 7; Response at 13,15; Ex. B43-52, 56). Moreover, defendants Lawyer and Butenhoff are alleged to have retaliated against plaintiff by writing “false misbehavior reports.” (Pi’s Response to Defs’ Mem. Supp. Dismiss at 15). Lawyer also allegedly told Butenhoff “not to give plaintiff nothing, and not let plaintiff out of his cell during the scheduled runs.”
 
 Id.
 
 Finally, Lawyer allegedly stated to plaintiff, “this is what happens when you write us up, so don’t cry about getting burnt.”
 
 Id.
 

 Drawing the inferences most favorable to plaintiff from these allegations, the adverse actions allegedly committed by Wilk, Perlman, Lawyer, and Butenhoff were casually connected to plaintiffs protected speech and sufficiently set forth the personal involvement of those defendants. However, the remaining moving defendants who are merely listed at the beginning of the complaint — Morris, LeClaire Jr., and Alexis — -are never connected in the complaint to any particular adverse action. Accordingly, the motion to dismiss on the grounds of lack of personal involvement as to those defendants is granted and the complaint is dismissed as to them with leave to amend within 30 days to adequately plead the personal involvement of those defendants.
 
 [8]
 
 The motion as to Wilk, Perl-man, Lawyer, and Butenhoff on this ground is denied.
 

 F.
 
 Defendants are Not Entitled to Qualified Immunity
 

 Defendants also urge that they are immune from suit pursuant to the doctrine of qualified immunity. Qualified immunity balances the practical impact of section 1983 suits:
 

 To accommodate the conflict between the goals of § 1983 in deterring governmental abuse and remedying unlawful governmental transgressions on the one hand, and the societal interest in not unduly burdening legitimate government operations on the other, the Supreme Court established qualified immunity as an affirmative defense to § 1983 claims.”
 

 Johnson,
 
 239 F.3d at 250 (citing
 
 Harlow v. Fitzgerald,
 
 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982);
 
 Rodriguez v. Phillips,
 
 66 F.3d 470, 475 (2d Cir.1995)). “A government actor performing a discretionary task is entitled to qualified immunity from § 1983 suits if either: (a) the defendant’s action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.”
 
 Id.
 
 (quoting
 
 Salim v. Proulx,
 
 93 F.3d 86, 89 (2d Cir.1996)).
 

 Defendants mistakenly focus upon whether there is clearly established law regarding the receipt of grievances and a failure to act. As set forth above, the complaint alleges affirmative retaliation by both Greiner and his subordinates in response to plaintiffs exercise of his First Amendment rights. Such actions, including the creation of bogus misbehavior reports, improperly motivated prison transfers, and threats and attacks on plaintiffs life in retaliation for exercising plaintiffs First Amendment rights, violate clearly
 
 *DXCI
 
 established law and no reasonable government official could think otherwise.
 
 See e.g., Davis,
 
 320 F.3d at 352.
 

 G.
 
 Plaintiff’s Claims Against Defendants in Their Official Capacities for Money Damages Are Dismissed
 

 Plaintiff requests relief in the form of monetary damages and injunctive relief, asserting claims against defendants in both their official and individual capacities. Defendants are correct that the claims against them in their official capacities for money damages are barred by the Eleventh Amendment to the U.S. Constitution, which precludes suits in federal court against a state’s agent absent consent.
 
 See Pennhurst Interstate Sch. & Hosp. v. Halderman,
 
 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984);
 
 see also Hafer v. Melo,
 
 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). However, state agents may be sued in their official capacities for equitable relief affecting the official’s future conduct, rather than retroactive monetary relief.
 
 See Pennhurst
 
 at 102-03, 104 S.Ct. 900;
 
 see generally Ex Parte Young,
 
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Accordingly, plaintiffs claims against defendants in their official capacities for money damages are dismissed.
 

 CONCLUSION
 

 For the reasons set forth above, plaintiffs claims arising out of the property Hernandez lost in the September 3, 1998 fire and the cause of that fire are dismissed in accord with the doctrine of issue preclusion as are the claims against Gad-son, Caban, and Pagliuca. In addition, plaintiffs claims against defendants for money damages in their official capacities are dismissed. Finally, plaintiffs claims against defendants Goord, Morris, Le-Claire Jr., and Alexis are dismissed for lack of personal involvement with leave to amend within 30 days to adequately describe their personal involvement in the alleged violations. To the extent the moving defendants’ motion to dismiss has not been granted, that motion is denied.
 

 [1]
 

 . The Caban letter is annexed as exhibit A to the affirmation of Assistant Attorney General Donald Nowve ("Nowve Aff.”); the decision of Judge Scuccimarra is attached to the Nowve Aff. as exhibit B.
 

 [2]
 

 . The 33 page "Plaintiffs Memorandum of Law in Response to Motion to Dismiss” is a response submitted by Hernandez in opposition to the motion to dismiss. It contains a 10 page "statement of facts” attempting to support and clarify the complaint. As set forth infra, at p. 8, the facts alleged in that document will be viewed as part of the complaint for purposes of this motion to dismiss.
 

 [3]
 

 . Attached to the complaint is a list of defendants described by plaintiff as “Sing Sings' defendants (electrical fire)” as well as “Green Haven defendants (Noose and Harassment, etc.).” There are also two other lists that accompany the complaint. One list describes exhibits, pages 1-68, designated as Exhibit “A,” and appears to correspond to the "Sing Sing defendants.” The other list describes exhibits, pages 1-84, designated as Exhibit B, and appears to correspond to the Green Haven defendants. The two sets of documents that comprise Exhibits A and B total approximately 150 pages.
 

 [4]
 

 . This Court does not construe plaintiff’s conspiracy claim as being asserted pursuant to 42 U.S.C. § 1985(3). That claim would clearly fail because Hernandez has not set forth even conclusory allegations of racial or other invidious class-based animus prohibited by section 1985, let alone any factual predicate to support such a claim.
 
 See United Bhd. of Carpenters and Joiners of America, Local 610, AFL-CIO
 
 v.
 
 Scott,
 
 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Rather, plaintiff's allegations focus on individual retaliation for actions protected by the First Amendment, not class-based discrimination.
 

 [5]
 

 . The Second Circuit recently wrote that the standard set forth in
 
 Dwares
 
 may present too high a pleading burden for a plaintiff, and is overruled to the extent that it is inconsistent with
 
 Swierkiewicz. See Phelps,
 
 308 F.3d at 187 n. 6. Just how
 
 Swierkiewicz
 
 affects the pleading requirements for Section 1983 actions remains uncrystallized in the Second Circuit.
 
 See Toussie v. Powell,
 
 323 F.3d 178, 185 n. 3 (2d Cir.2003) C'[W]e do not have occasion to examine the pleading requirements for § 1983 conspiracy claims. In particular we do not consider whether our previous statements on the pleading requirements for such conspiracy allegations, ... [requiring more than conclusory allegations to avoid dismissal] ... remain valid in light of ...
 
 Leath-ennan ...
 
 and
 
 Swierkiewicz
 
 ....”). Nevertheless, Hernandez meets even the perhaps elevated standard set forth in
 
 Ciambriello
 
 and
 
 Dwares.
 

 [6]
 

 . "Receipt of letters or grievances ... is insufficient to impute personal involvement.... 'Were it otherwise, virtually every prison inmate who sues for constitutional torts by prison officials could name the [supervisor] as a defendant since the plaintiff must pursue his prison remedies, and invariably the plaintiff's grievance will have been passed upon by the [supervisor].”
 
 See Woods v. Goord,
 
 No. 01 Civ. 3255(SAS), 2002 WL 731691 at *7 (S.D.N.Y. Apr.23, 2002) (internal citations omitted). Here, however, plaintiff alleges active retaliation by Greiner beyond his merely receiving grievances.
 

 [7]
 

 . The claims against Gadson, and separately against Caban and Pagliuca, regarding a "conspiracy to deny the property claim in retaliation for suing their boss,” are dismissed because those claims depend upon the issue
 
 *DXC
 
 of fault for the September 3, 1998 fire, already litigated and decided at the Sing Sing trial. Accordingly, these additional claims are barred by the doctrine of issue preclusion.
 

 [8]
 

 .
 
 See
 
 Fed R. Civ. P. 15(a);
 
 see e.g., Davis
 
 320 F.3d at 352 ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the
 
 ¡pro se
 
 ] complaint gives any indication that a valid claim might be stated.”) (quoting
 
 Gomez v. USAA Fed. Sav. Bank,
 
 171 F.3d 794, 795 (2d Cir.1999)).