Nancy OSTENSEN, Plaintiff,

v.

SUFFOLK COUNTY, Suffolk County Police, Police Officer Thomas Gallagher (Shield # 3414), Patricia Capucci, and Rosemary Knecht, Defendants.

No. 01–cv–05625(ADS).

United States District Court,
E.D. New York.

July 18, 2005.

Philip J. Dinhofer, Esq., New York, NY, for the Plaintiff.

Suffolk County Attorney's Office, by Arlene S. Zwilling, Assistant County Attorney, Hauppauge, NY, for the Defendants Suffolk County, Suffolk County Police, Police Officer Thomas Gallagher.

Patricia Capucci, Selden, NY, Pro Se Defendant.

Rosemary Knecht, Sayville, NY, Pro Se Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Nancy Ostensen, ("the Plaintiff"), commenced this action against Suffolk County, the Suffolk County Police Department, and Police Officer Thomas Gallagher (collectively, "the County Defendants"), and Patricia Capucci and Rosemary Knecht, (collectively, "the Private Defendants"), asserting constitutional claims under Section 1983, and various New York state law claims. The Plaintiff alleges that the defendants violated her Fourth and Fifth Amendment right to be free from unreasonable search and seizure; denied her the right to police protection; denied her the right to equal protection under the law; and denied her the right to be free from cruel and unusual punishment. In addition, the Plaintiff asserts claims under New York State law for negligence and violations of the New York State Human Rights law. Currently before the court is a motion by the County Defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

### I. BACKGROUND

The following set of facts are taken from the Defendant's Rule 56.1 Statement unless otherwise indicated. In 1990, Private Defendant Patricia Capucci and Ernest Capucci were married. They purchased and resided in a home at 14 Ambassador Lane in Selden, New York, and had two sons together. In early 1998, Mr. and Ms. Capucci separated. On April 9, 1998, they executed a separation agreement in which they both agreed to release all rights in the estate of the other. In addition, the agreement provided that Mr. Capucci was to have exclusive use and occupancy of the home. Ms. Capucci executed a deed transferring her interest in the property to him.

After the separation, sometime in December 1998, Mr. Capucci began dating the Plaintiff. Approximately one month into their relationship, the Plaintiff and her son Justin moved into Mr. Capucci's home. On April 6, 2000, Mr. Capucci suddenly died after he suffered a heart attack. Mr. Capucci apparently died intestate, namely, without leaving a will. According to the Plaintiff, at the time of Mr. Capucci's death, the two were engaged to be married, and planned to wed when his divorce from Ms. Capucci was finalized.

Soon after Mr. Capucci died, defendant Rosemary Knecht, who is Mr. Capucci's sister, and Ms. Capucci went to 14 Ambassador Lane to obtain some of Mr. Capucci's possessions and inquire of the Plaintiff as to when she planned to move out of the house. The Plaintiff did not respond to this inquiry, and a dispute ensued. The police were eventually called to the residence to resolve the dispute. This incident was the beginning of a continuing conflict between the Plaintiff and the Private Defendants over rightful possession of Mr. Capucci's house. The Plaintiff alleges in her opposition to the County Defendants' motion for summary judgment that the Private Defendants would sit in parked cars in front of the house watching her. The Private Defendants allege that they were watching the house because the Plaintiff was slowly removing expensive items belonging to Mr. Capucci from the house.

In early May 2000, Ms. Capucci called the police and requested that they respond to 14 Ambassador Lane to obtain the license plates from cars that she claimed to own. The Plaintiff alleges that the officer

that handled this call was County Defendant Officer Gallagher. In his deposition, Officer Gallagher stated that he responded to a complaint regarding stolen cars at 14 Ambassador Lane and spoke with the Plaintiff's son. Officer Gallagher checked the numbers on the license plates of the cars with the police database to find out if they had been reported missing or stolen. Officer Gallagher stated that he left the scene after the search revealed that the cars had not been reported stolen.

On May 26, 2000, the date of the incident that gave rise to this action, Ms. Capucci and Ms. Knecht, along with the Capucci's young sons Raymond and Devin, went to the house at 14 Ambassador Lane to allegedly obtain Mr. Capucci's will, along with other documents they believed were in the house. The Plaintiff was not in the house at the time. The Private Defendants entered by breaking open a window. Once inside, they searched the home and took several items, mainly documents such as bank records. They also called a locksmith and had the locks on the doors changed. When Maryann Porcaru, a neighbor, saw the Defendants in the house, she called the Plaintiff's cell phone. The Plaintiff immediately drove to the house, and both she and Ms. Porcaru called the police. The Plaintiff told the dispatcher, "I swear to God I'll kill this woman if she does anything to my stuff." After the Plaintiff arrived, Private Defendant Capucci also called the police and said. that a woman was at the house threatening her and that she believed the woman had a gun.

According to the Plaintiff, the dispatch tape recordings reveal that the dispatcher announced that a burglary was occurring at 14 Ambassador Lane and requested that patrol cars respond. In response, Officer Gallagher radioed the dispatcher and stated that he was aware of the "situation" and that it was not a burglary, and that he would take the call. In Gallagher's deposition, he stated that the dispatcher initially classified the complaint as a domestic disturbance and that when he was in route to the location the dispatcher stated it was a burglary, at which point he told the dispatcher that it was not a burglary. While on his way there, he requested that Sergeant Aki also respond to the incident.

Officer Gallagher's police reports reveal that earlier the same day, he answered a call to Ms. Capucci's home. Ms. Capucci testified that she called the police and asked them to respond to her home after her mailbox and a "For Sale" sign were stolen. Gallagher admits in his deposition that he answered the call, but he did not remember that it was the same day as this incident.

On May 26, 2000, the day at issue, Officer Gallagher arrived at the scene of 14 Ambassador Lane approximately five to ten minutes after the Plaintiff arrived. The Plaintiff alleges that Officer Gallagher prevented her from entering the house and that he allowed the Private Defendant to continue searching inside the house. The Plaintiff further alleges that Officer Gallagher told her that the Private Defendants had a right to search the house because they owned it, and that he merely stood by while the Private Defendants removed items from the house. At some point during the incident, the Plaintiff called her attorney from a cellular phone, and she alleges that Officer Gallagher refused to speak with the attorney.

Officer Gallagher testified at his deposition to different events. When he arrived the parties were outside arguing and Ms. Knecht shouted that the Plaintiff had a gun in her car. He briefly observed the Plaintiff's car, and did not believe that she had a gun and allowed her to enter the car to obtain several items she wanted. He

then spoke with each of the parties and learned that there was a dispute between them as to who was the rightful owner of the house.

The Plaintiff stated that after Officer Gallagher arrived she called the police a second time and requested that another officer come to the scene. Sergeant Aki soon arrived, although it is unclear whether or not he arrived because Defendant Gallagher requested him to come or because the Plaintiff made the second call. When Sergeant Aki arrived, the Plaintiff gave him the deed to the house and the Capuccis' settlement agreement. Sergeant Aki, the Plaintiff, and Defendant Gallagher then went into the house to see if anything was missing or broken. Officers Aki and Gallagher told the Plaintiff they would obtain the items that were taken. In addition, the Plaintiff alleges that the officers attempted to dissuade her from pressing criminal charges against the Private Defendants.

In Officer Gallagher's deposition, he stated that he spoke to Ms. Capucci after the incident and she stated that she took papers from the house and brought them to her residence. Officer Gallagher then went to Ms. Capucci's house and returned the papers to the Plaintiff and arrested her for petty larceny. The Officers also obtained a key for the Plaintiff to the new locks that had been installed by the Private Defendants.

After the incident, both parties were unable to find the alleged will of Mr. Capucci. In the state court litigation that followed, Ms. Capucci questioned the validity of the separation agreement and claimed that Mr. Capucci did not carry out his part of the agreement to keep an insurance policy for the children. Ms. Knecht eventually received letters of administration in Ernest Capucci's estate. On June 13, 2000, Knecht commenced a landlord-

tenant holdover proceeding in Suffolk County District Court against the Plaintiff. On July 17, 2000, the Plaintiff and Knecht settled the proceeding, and the Plaintiff vacated the house at 14 Ambassador Lane.

## II. DISCUSSION

### A. The Summary Judgment Standard

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed. R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Id. (internal quotations and citations omitted); see Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14 (1986); Vann v. City of New York, 72 F.3d 1040, 1048–49 (2d Cir.

1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

**B. The Section 1983 Unreasonable Search Claim**

To prevail on a Section § 1983 claim, the Plaintiff must show that the County Defendants acted under color of state law and that she was deprived a right secured by the Constitution or laws of the United States. *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004). In this case the Plaintiff argues that the County Defendants violated her Fourth Amendment right to be free from unreasonable searches by allowing the Private Defendants to search the house.

■ Under the Fourth Amendment, "a 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). With this in mind, it worth noting that a person can have a legally sufficient interest in a place that is not necessarily owned by that person. *Rakas v. Illinois,* 439 U.S. 128, 141–42, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The Supreme Court has stated that "[t]he Fourth Amendment protects people, not places." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). When invoking the protection of the Fourth Amendment a party must be able to demonstrate that he or she had a legitimate subjective expectation of privacy in the place searched. *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

■ Further, the Supreme Court has recognized that when an individual resides in one place for a substantial period of time, he or she does not need to actually own the place in order to rightfully call it a home and have a valid expectation of privacy. *Carter,* 525 U.S. at 95, 119 S.Ct. 469. "People call a house 'their' home when legal title is in the bank, when they rent it, and even when they merely occupy it rent free—*so long as they actually live there.*" *Id.* at 95–96, 119 S.Ct. 469 (emphasis in original).

■ In *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court recognized that an overnight guest in a home can have a reasonable expectation of privacy in his overnight quarters. The Supreme Court held that a warrantless search of the home where the guest was staying was a violation of the Fourth Amendment. The Supreme Court rejected the argument that an individual claiming unreasonable search is only protected if he can prove the place searched was his home:

[A]lthough we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend. Society expects at least as much privacy in these places as in a telephone booth—"a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable."

*Olson*, 495 U.S. at 99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (quoting *Katz*, 389 U.S. at 361, 88 S.Ct. 507).

In this case, the Plaintiff occupied the house in question for one year and five months as a guest of the owner of the home. At the time of the search, she considered the house her home even though she was not paying rent and the deed was not in her name. The house was her primary residence—it was her mailing address and even the address that appeared on her Driver's license. Therefore, she had a reasonable expectation of privacy in the house. While the Plaintiff was eventually evicted from the house, at the time the Private Defendants searched her home she had a reasonable expectation of privacy under the constitution.

■ Nonetheless, in order to succeed on a Section 1983 claim, the Plaintiff must be able to show that at least one of the Defendants was acting under color of state law. The plaintiff may establish this in one of two ways. First, the plaintiff could show that the defendant Police Officer Gallagher had personal involvement in the constitutional violation. *Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir.1999). In this case, it is undisputed that only the Private Defendants carried out the alleged unlawful search of the Plaintiff's home. As a consequence, there can be no direct claim against the County Defendants involving the search of the premises.

Where, as here, there is no evidence that a public defendant personally participated in the alleged constitutional deprivation, a public defendant can be liable under section 1983 claim if a conspiracy existed between the private and public actors. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). To prove a section 1983 conspiracy, the plaintiff must show (1) the existence of an agreement between a state actor and a private entity to act in concert to inflict an unconstitutional injury; and (2) an overt act done in furtherance of that goal. *Id.*

In this case the Plaintiff argues that Officer Gallagher intentionally responded to the incident because he had previously agreed to aid and abet the Private Defendants in their attempt to obtain documents from the house and change the locks. The Court finds this argument unsupported by the evidence. The evidence that the Plaintiff offers in support of its argument includes the fact that Officer Gallagher had previously responded to the home of Ms. Capucci sometime before the incident at issue and that he responded to the reported burglary. The plaintiff has offered no evidence to establish that an agreement was made by Officer Gallagher to act in concert with the Private Defendants to conduct the search. There is insufficient evidence of a conspiracy from these facts. *See San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 256 (2d Cir.1984) (affirming the lower court's holding granting summary judgment when the only evidence of a conspiracy was that the defendants met on several occasions and there was nothing suspicious about the meetings).

The Plaintiff's contention that Officer Gallagher resolved the theft of her items and arrested one of the Private Defendants solely to cover up the conspiracy is also entirely speculative. Simply having prior knowledge of the dispute between

the parties is not sufficient to support a reasonable inference that the parties were acting in concert with each other.

Further, the undisputed evidence shows that Officer Gallagher's conduct at the scene in no way indicated the existence of a conspiracy. Within an hour after Officer Gallager arrived, he escorted the Plaintiff through the home and obtained the items that were taken by the Private Defendants. In addition, he obtained the new keys for the locks that had been installed and arrested one of the Private Defendants. Viewing the evidence in a light most favorable to the Plaintiffs, the Court finds that there is no evidence that the County Defendants conspired with the Private Defendants. Accordingly, the County Defendants are entitled to summary judgment dismissing the Plaintiff's claim for unlawful entry.

## C. The Section 1983 Unreasonable Seizure Claim

■ The Plaintiff claims that her Fourth Amendment right to be free from unreasonable seizure of property was violated when the County Defendants prevented her from entering the house at 14 Ambassador Lane. To establish a deprivation of property, a plaintiff must show that a person acting under color of any state statute, regulation, custom or usage deprived plaintiff of a right secured by the Constitution. *Barrett v. Harwood,* 189 F.3d 297, 301 (2d Cir.1999). The right to be free from unreasonable seizure "protects property even where privacy or liberty is not implicated." *Soldal v. Cook County,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). A seizure of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

The Plaintiff primarily relies on *Soldal* in support of her argument that mere presence of law enforcement officers at the scene of an unlawful search conducted by a private party could support an unreasonable seizure violation under color of state law. *See Soldal,* 506 U.S. at 61, 113 S.Ct. 538, 121 L.Ed.2d 450. *Soldal* involved a landlord that forcibly evicted a tenant from a trailer park by towing away the tenant's mobile home. The landlord acted without prior court approval. The officers present at the scene of the wrongful eviction were there at the request of the defendant and were present throughout the entire incident. The Supreme Court stated that such presence constituted state action. It noted that "[a]s a result of the state action ..., the Soldals' domicile was not only seized, it literally was carried away, giving new meaning to the term 'mobile home.'" *Id.* 506 U.S. at 61, 113 S.Ct. 538, 121 L.Ed.2d 450.

The facts in the present case are readily distinguishable for several reasons. First, Officer Gallagher responded to calls from both the Plaintiff and the Defendant while the incident was unfolding. Conversely, the officers present at the scene in *Soldal* allowed the conduct to occur from the beginning and knew, or should have known, that it was unlawful under Illinois law.

Second, unlike the holdover tenant of the trailer home park in *Soldal,* here the Plaintiff did not have a possessory interest in the property. A cohabiter who lives at a location with the permission of the owner is considered a licensee, not a tenant with a lease. *See Young v. Carruth,* 89 A.D.2d 466, 469, 455 N.Y.S.2d 776 (1st Dep't 1982) (holding that the administrator of the decedent could remove the decedent's girlfriend from the decedent's apartment even though she had been residing there with decedent because the girlfriend was a licensee). Moreover, New York law states

that a "a servant or licensee acquires no possessory interest in property. . . ." *P & A Brothers,* 184 A.D.2d at 268, 585 N.Y.S.2d 335.

Indeed, in this case the Plaintiff's license had expired when the home was transferred to the estate of Mr. Capucci after his death. As such, no landlord-tenant or licensee relationship existed between the Plaintiff and the estate of the decedent. Without being able to establish that she had possessory interest in the house, the Plaintiff cannot successfully maintain an unreasonable seizure claim. Accordingly, the County Defendants are entitled to summary judgment dismissing the Section 1983 unreasonable seizure claim.

### D. Section 1983 Due Process Claims

■ The Plaintiff asserts that her due process rights were violated when "her" house and possessions in the house were seized and Officer Gallagher did not intervene, making it a governmental seizure of property. She further alleges that Officer Gallager permitted the Private Defendants to continue to enter the house and leave the scene, denying her property in violation of the Fifth Amendment.

Seizure of property can constitute both a Fourth and Fifth amendment violation. *See Soldal,* 506 U.S. at 63, 113 S.Ct. 538, 121 L.Ed.2d 450. "Where the government seizes property not to preserve evidence of criminal wrongdoing but to assert ownership and control over the property, its actions must also comply with the Due Process Clause." *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452. Individuals must receive notice and an opportunity to be heard before the Government deprives them of property. *United States v. $8,850,* 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

The Court finds the Plaintiff's claim in this regard is without merit. First, the Plaintiff cannot bring a claim for denial of due process on the seizure of the home because she did not have a possessory interest in the home. Second, although the Plaintiff had an expectation of privacy in some of the items that were seized, these items were seized by the Private Defendants, not the state actors. In addition, the Plaintiff has not offered sufficient evidence to demonstrate that Officer Gallagher was so involved in the actions of the Private Defendants as to constitute a conspiracy between the parties. Therefore, the County Defendants are entitled to summary judgment dismissing the due process claims.

### E. As to the Plaintiff's Remaining Federal Claims

The Plaintiff also states in her complaint claims for denial of her right to police protection; denial of her right to equal protection under the law; and denial of her right to be free from cruel and unusual punishment. As the Plaintiff has failed to set forth facts showing that the police (1) did not protect her, (2) did not treat her equally, or (3) used cruel and unusual punishment in any manner, those claims are also dismissed.

### F. Qualified Immunity

■ The County Defendants argue that even if they were involved in a constitutional violation of the Plaintiff's rights, they are protected from liability under the doctrine of qualified immunity. Qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ying Jing*

*Gan v. City of New York,* 996 F.2d 522, 531 (2d Cir.1993) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In short, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen,* — U.S. —, —, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Thus, assuming that the Plaintiff was able to prove an unreasonable search and seizure claim, the Defendant is entitled to immunity if it was objectively reasonable for the Defendant to believe that his actions did not violate the Plaintiff's clearly established rights. *Lennon,* 66 F.3d at 423. In this inquiry the court must consider whether "officers of reasonable competence could disagree on the legality of the Defendant's actions." *Id.* Construing the evidence in the light most favorable to the Plaintiff, she alleges that when Officer Gallagher arrived, he told her not to go in the house because it was not her house, and he would not look at documents showing that Ms. Capucci was not the rightful owner of the house. She alleges that he sat in his police car and would not speak with her, and that she was not allowed back into the house until the second officer, Sergeant Aki, arrived, about half hour to an hour after Officer Gallagher arrived.

Despite the Plaintiff's assertions, it cannot be argued that Defendant Gallagher knew or should have known that his actions would violate the Plaintiff's constitutional rights. Officer Gallagher's actions at the scene appear to be an effort to keep the peace between the parties. There is a distinction between a law enforcement officer attending a private seizure to ensure that it transpires in an orderly and peaceful manner and actively assisting in unlawful conduct. *See Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d 989, 995 (6th Cir.1994). Here, Officer Gallagher's conduct demonstrates that he only served to keep the peace, not to actively assist in an unlawful seizure. For instance, Officer Gallagher permitted the Plaintiff to re-enter the house after the incident was over. He recovered the items that the Private Defendant had taken from the house, obtained a key to the new locks that had been installed, and arrested one of the Private Defendants for petty larceny. Having done all this, the Court finds that he acted in an objectively reasonable manner under the circumstances. Thus, even if the Court were to find that the Officer's initial action of not permitting the Plaintiff to enter the house constituted active participation in the search or seizure, his handling and rectifying of the situation was objectively reasonable. Therefore, Officer Gallagher is entitled to qualified immunity on all of the Section 1983 claims. Accordingly, the Court grants the motion for summary judgment dismissing the claims against Officer Gallagher on the ground of qualified immunity.

**G. As to the Claims against Suffolk County**

Municipalities may not be held liable under section 1983 for the acts of their employees based solely on a theory of respondeat superior. *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998); *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir.1989); *accord Soucie v. County of Monroe,* 736 F.Supp. 33, 38 (W.D.N.Y.1990). In order to establish municipal liability, "a plaintiff must show that the violation of [her] constitutional rights resulted from a municipal custom or policy." *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 122 (2d Cir.1991). As stated above, there was no constitutional deprivation by the defendant

Officer. Thus, there can be no section 1983 claim against Suffolk County. *See Escalera v. Lunn*, 361 F.3d 737, 749 (2d Cir.2004) (holding that because there was no section 1983 claim against the individual police officer defendants the County was also entitled to summary judgment).

All of the allegations in the complaint are directed at the individual acts of the Officer and not the County. The Plaintiff has not alleged that a custom or policy of the County caused a deprivation of civil rights. A liberal reading of the complaint reveals that there are no allegations against the County. As such, the Court finds that the motion for summary judgment dismissing the complaint against the County is granted.

### G. As to the State Law Claims

The complaint appears to allege various state law claims. In order to entertain these claims, the Court must exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. This statute provides, in pertinent part: "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." In addition, the Second Circuit has stated that "if [a]ll federal claims are dismissed *before trial* ..., the state claims should be dismissed as well." *Motorola Credit Corporation v. Uzan*, 388 F.3d 39, 56 (2d Cir.2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)) (emphasis added in *Motorola*); *see also Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002); *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because this decision grants the County Defendants' motion for summary judgment dismissing all of the Plaintiff's federal claims prior to the trial,

the Court declines to exercise supplemental jurisdiction and dismisses any and all state claims.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the County Defendants' motion for summary judgment under Rule 56 of the Fed.R.Civ.P. is **GRANTED** dismissing the complaint in its entirety; and it is further

**ORDERED,** that the Court declines to exercise supplemental jurisdiction and dismisses all state law claims against the County and Private Defendants; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**